THOMPSON, J.
J.J.W. appeals his adjudication of delinquency based- on a finding that he was guilty of manslaughter.
J.J.W. contends that the court erred in denying his motion for dismissal pursuant to Florida Rule of Juvenile Procedure 8.110(f), which provides: “Dismissal. If the court finds that the allegations in the petition have not been sustained, it shall enter an order so finding and dismissing the case.” Such a motion is equivalent to a motion for judgment of acquittal in the criminal law context. R.M. v. State, 763 So.2d 1060, 1061 (Fla. 4th DCA 1999). J.J.W. argues that the facts at trial establish excusable homicide, rather than manslaughter, as a matter of law. We affirm the judgment because we conclude that the trial court correctly denied the motion to dismiss.
The appellate court reviews an order on a motion for judgment of acquittal de novo. Pagan v. State, 830 So.2d 792, 803 (Fla.2002). Generally, the appellate court will not reverse a conviction which is supported by competent, substantial evidence. Id. If, after viewing the evidence in the light most favorable to the state, a rational fact finder could find the existence of the elements of the crime beyond a reasonable doubt, sufficient evidence exists to sustain a conviction. Id. In moving for a judgment of acquittal, a defendant admits the facts in evidence and every conclusion favorable to the adverse party that the fact-finder might fairly and reasonably infer from the evidence which may be drawn from the facts. Lynch v. State, 293 So.2d 44, 45 (Fla.1974).
Section 782.07, Florida Statutes, defines manslaughter as: “The killing of a human being by the act, procurement, or culpable negligence of another, without lawful justification according to the provisions of chapter 776 and in cases in which such killing shall not be excusable homicide or murder.... ” Homicide is excusable: ■
when committed by accident and misfortune in doing any lawful act by lawful means with usual ordinary caution, and without any unlawful intent, or by accident and misfortune in the heat of passion, upon any sudden and sufficient provocation, or upon a sudden combat, without any dangerous weapon being used and not done in a cruel or unusual manner.
§ 782.03, Fla. Stat. (emphasis supplied).
J.J.W. argues that this case involves excusable homicide because it occurred upon sudden provocation and combat. The evidence adduced at trial was that J.J.W., age fifteen, had heard that Shane Ferrell, the fifteen-year-old victim, had been supplying JJ.W.’s little brother with cigarettes. One or two days before the day of the incident, J.J.W. went to a skateboarding park in an unsuccessful search for Ferrell. On the day of the incident, as J.J.W. approached the entrance to the park, Ferrell exited the park and met J.J.W. outside the entrance. The approximately ten other children in the area gathered around, having anticipated that the two would fight. Ferrell was holding his skateboard by the “trucks”— the metal device that holds the wheels to the board — and the skateboard was hanging down at his side.
According to J.J.W., Ferrell said he understood that J.J.W. wanted to fight. The bystanders did not testify that they heard that statement, but they heard J.J.W. ask Ferrell if he had been giving cigarettes to J.J.W.’s brother. Ferrell denied it, but someone in the group of witnesses contradicted Ferrell. J.J.W. then punched Ferrell in the face. Ferrell staggered and fell to the ground, ultimately lying flat on his *1191 back. Ferrell said “no” or “stop,” but J.J.W. walked around him and kicked him in the head. J.J.W. later told the police that he punched Ferrell because he was supplying J.J.W.’s brother cigarettes and marijuana. J.J.W. told the police that the kick was a glancing blow, but others characterized it as one with full contact, one like a winning soccer kick, and one that made Ferrell’s head “jilt real fast.” Ferrell made no movement after the kick.
Paramedics returning to the nearby fire station saw the group of children in the middle of the street and approached. They performed CPR on Ferrell, but were unsuccessful, and at a hospital approximately 15 minutes later, Ferrell was declared dead. The medical examiner concluded that the cause of death was blunt force trauma. The skull was not fractured, but there were severe brain injuries with hemorrhaging.
J.J.W. argues that the evidence was insufficient as a matter of law to sustain the finding of guilt because Ferrell approached J.J.W., they exchanged angry words, and, although there was no testimony that Ferrell made any threatening gestures, he could have used his skateboard as a weapon. Furthermore, he points out, the medical examiner testified that although it was unlikely, the punch rather than the kick could have been the fatal blow. We conclude that even if the punch was the ultimate cause of death, the evidence supported a finding of guilt.
This case is similar to Weir v. State, 111 So.2d 1073 (Fla. 4th DCA 2001). There, while the defendant and the victim were exchanging angry words, the defendant punched the victim between the eyes. The victim fell back and his head swung back. He hit his back against the kitchen counter, took two or three steps, and collapsed. He died after life support was removed. The court held that the circumstances did not amount to excusable homicide because, since the victim had not been fighting, there was no “sudden combat.” Id. at 1075-76 (citing Valencia v. State, 597 So.2d 372 (Fla. 3d DCA 1992)).
Also similar is Acosta v. State, 884 So.2d 112 (Fla. 2d DCA 2004), in which two groups of high school students decided to meet in a parking lot to fight. The defendant asked the victim if he really wanted to fight, and the victim replied that he did. In the parking lot, fighting and arguing among the students broke out, and as the victim and another boy argued with each other, the defendant stood silently behind the other boy with his hands clenched. Suddenly, while the victim was distracted and unprepared to defend himself, the defendant punched him in the face causing him to crumple to the ground. The defendant continued to hit him as he lay on the ground. The defendant argued on appeal that the victim’s death was probably the result of the first punch in a teen-aged fistfight. In affirming the conviction,[1] the court explained that although a death resulting from a brief disagreement is not necessarily manslaughter, the cases in which the death is not manslaughter are fact-specific and involve shoving matches rather than fistfights. Id. at 114 (citing Aiken v. State, 425 So.2d 641 (Fla. 3d DCA 1983); Tipton v. State, 97 So.2d 277 (Fla.1957)).
In this case, the evidence was such that the finder of fact could have found that there was no “sudden combat” from J.J.W.’s point of view, or “sudden and sufficient provocation.” The factfinder could have found that Ferrell was simply standing with his skateboard at his side, that *1192 J.J.W. had been “looking” for Ferrell in the prior days, that Ferrell never threatened J.J.W., by word or gesture, that Ferrell was completely unprepared when J.J.W. punched him in the face and that, as in Acosta, J.J.W. started and finished the fight with the first punch.
AFFIRMED.
GRIFFIN and PLEUS, JJ., concur.

. The state initially filed juvenile delinquency proceedings against Acosta. Shortly before his eighteenth birthday, however, these filings were replaced with an information alleging manslaughter by act or culpable negligence. Acosta, 884 So.2d at 114.