444 So.2d 931 (1983)
Thomas J. TAYLOR, Petitioner,
v.
STATE of Florida, Respondent.
No. 61143.
Supreme Court of Florida.
December 22, 1983.
Rehearing Denied February 27, 1984.
*932 Kirk N. Kirkconnell and Warren W. Lindsey of Muller & Kirkconnell, Winter Park, for petitioner.
Jim Smith, Atty. Gen. and Mark C. Menser, Asst. Atty. Gen., Daytona Beach, for respondent.
BOYD, Justice.
This case is before us to review a decision of a district court of appeal, Taylor v. State, 401 So.2d 812 (Fla. 5th DCA 1981), which passed upon a question certified to be of great public importance. We have jurisdiction. Art. V, § 3(b)(4), Fla. Const.
Petitioner Taylor was charged by indictment with two counts of first-degree murder and by information with one count of attempted first-degree murder. The indictment charged petitioner with murdering Teddy Pawalta and John Walwyn on the 27th day of October, 1979. The information charged him with attempting to murder Harry Clayton on the same day but left out the year. In both cases petitioner filed a motion for statement of particulars, requesting the exact date, time and place of the alleged crimes. Petitioner also moved to dismiss the information for failure to allege essential and ultimate facts, namely the year the attempted murder was to have taken place. Upon petitioner's motion both cases were consolidated for trial. The court then granted the motion for statement of particulars with respect to each count of the indictment and information, but later denied the motion to dismiss the information. In its statement of particulars, the state narrowed the time of death as occurring between 12:01 a.m., October 24 and 12:01 a.m., October 28.
After the jury was sworn, petitioner again moved to dismiss the information for failure to allege as definitely as possible the time of the offense. The state responded that since petitioner had not been prejudiced, the court had the discretion to allow the state to amend the information. The court found petitioner had not been prejudiced and therefore denied his motion to dismiss and granted the state's motion to amend the information.
At the trial, evidence was produced showing that petitioner had shot the three victims with a shotgun at around 11:30 p.m. on October 27, 1979. However, there was no evidence as to when Pawalta and Walwyn had actually died. The only relevant evidence was the medical examiner's testimony that the two men were dead when he performed the autopsies at 9:30 a.m., October 28, the morning after the shooting. After the state rested, petitioner moved to dismiss the indictment for failure of any proof that the murder had been committed within the time given in the bill of particulars or on the date listed in the indictment. Petitioner also renewed his motion to dismiss the information for lack of a specific date. The state responded by requesting leave to amend the bill of particulars by extending the time ten hours to include the time the autopsies were performed. Finding that petitioner had not been prejudiced in the preparation of his defense, the court granted the state's motion to amend the bill of particulars.
At the charge conference, the court asked the attorneys if there was a crime of attempted manslaughter. Petitioner's attorney averred that there was. So, without any objection, the court instructed the jury on attempted manslaughter as a lesser included offense of attempted first-degree murder.
The jury found petitioner guilty of attempted manslaughter of Clayton. It also found him guilty of second-degree murder of Walwyn and manslaughter of Pawalta. The judge sentenced petitioner to two consecutive three-year terms with twenty years probation for the crimes of manslaughter and second-degree murder and a concurrent five-year term for attempted manslaughter.
Petitioner appealed to the District Court of Appeal, Fifth District, arguing that the state should not have been allowed to amend the information or the bill of particulars and that there was no such crime as attempted manslaughter. The district court affirmed the judgments and certified *933 the following question as one of great public importance:
IS THERE A CRIME OF ATTEMPTED MANSLAUGHTER UNDER THE STATUTES OF THE STATE OF FLORIDA?
401 So.2d 816. Our answer is a qualified yes.
As he did before the district court, petitioner argues that the crime of attempted manslaughter is a logical impossibility. He asserts that a person cannot form an intent to commit an act by culpable negligence. The district court found a certain appeal to petitioner's argument, but concluded, as did the Fifth Circuit Court of Appeals in Charlton v. Wainwright, 588 F.2d 162 (5th Cir.1979), that the Florida Supreme Court has long recognized the crime of assault with intent to commit manslaughter. The district court reasoned that if there can be a crime of assault with intent to commit manslaughter, then there can be an attempt, which requires the formation of an intent, to commit manslaughter. The district court concluded that "precedent, if not logic, requires that we hold that there is a crime of attempted manslaughter in Florida." 401 So.2d at 816.
The district court failed to perceive the erroneous assumption in appellant's argument that manslaughter is necessarily an involuntary act. This has never been the case in Florida. The crime of assault with intent to commit manslaughter was premised upon the fact that in Florida the crime of manslaughter includes certain types of intentional killings. The first case to hold there was such a crime as an assault with intent to commit manslaughter was Williams v. State, 41 Fla. 295, 26 So. 184 (1899), wherein the defendant was charged with assault with intent to murder, but was convicted of assault with intent to commit manslaughter. He appealed on the basis that such a crime was unknown to the law. This Court disagreed, stating:
[T]here is nothing in the definition of manslaughter to exclude from its provisions all intentional homicides, or to include within the definition of murder all intentional killings, unless the intention is so deliberate as to amount to a premeditated design. The ordinary case of a sudden combat where the passions are aroused by sufficient provocation will furnish a pertinent illustration. Here there may be an intent to take life accompanied by an assault with a deadly weapon to carry out that intent. If the intent does not rise to the degree of a premeditated design, the killing will not be murder, but manslaughter. If the act does not result in death, why will not the party be guilty of an assault with intent to commit a felony, to wit: manslaughter? We think he will be... .
41 Fla. at 299-300, 26 So. at 186 (emphasis in original).[1] The Court made it clear, however, that for a conviction of assault with intent to commit manslaughter to be valid, there must be proof that the defendant did intend to kill.
But upon indictments for assault with intent to commit any of the grades or degrees of unlawful homicide, it will not be sufficient to show that the killing, had it occurred, would have been unlawful and a felony, but it must be found that the accused committed the assault with intent to take life, for although an unintentional or involuntary killing may in some cases be unlawful and a felony, no man can intentionally do an unintentional act; and without the intent the assault can not be punished under this statute, *934 even though the killing, had it been committed, would have amounted to a felony.
41 Fla. at 298, 26 So. at 185.
Thus this Court recognized the distinction found in common law between voluntary and involuntary manslaughter. The crime of assault with intent to commit manslaughter was found to exist only in those cases where, if death had resulted, the manslaughter would have been voluntary and not involuntary.[2] By the same reasoning, it is not a logical impossibility for the crime of attempted manslaughter to exist in situations where, if death had resulted, the defendant could have been found guilty of voluntary manslaughter. Accord Anthony v. State, 409 N.E.2d 632 (Ind. 1980); Commonwealth v. Hebert, 373 Mass. 535, 368 N.E.2d 1204 (1977); People v. Genes, 58 Mich. App. 108, 227 N.W.2d 241 (1975); State v. Norman, 580 P.2d 237 (Utah 1978); see also People ex rel. Bassin v. Isreal, 31 Ill. App.3d 744, 335 N.E.2d 53 (1975); State v. Carson, 292 Or. 451, 640 P.2d 586 (1982). But see People v. Weeks, 86 Ill. App.2d 480, 230 N.E.2d 12 (1967); State v. Carter, 44 Wis.2d 151, 170 N.W.2d 681 (Wis. 1969).
In the present case there was sufficient evidence to support the jury's verdict that appellant had attempted manslaughter. On the night of the shooting, appellant was tending a bar he owned. The three victims came in and started arguing with him about his firing Harry Clayton and about proper ownership of a dart throwing trophy. There is conflict in the testimony as to how much the victims actually provoked or threatened appellant before he grabbed his shotgun and started shooting. However, it is clear that appellant intentionally fired the shotgun at Clayton. This is sufficient proof that he intended to kill him. Kelly v. State, 78 Fla. 636, 83 So. 506 (1919).[3]
We therefore hold that there may be a crime of attempted manslaughter. We reiterate, however, that a verdict for attempted manslaughter can be rendered only if there is proof that the defendant had the requisite intent to commit an unlawful act. This holding necessitates that a distinction be made between the crimes of "manslaughter by act or procurement" and "manslaughter by culpable negligence." For the latter there can be no corresponding attempt crime. This conclusion is mandated by the fact that there can be no intent to commit an unlawful act when the underlying conduct constitutes culpable negligence. On the other hand, when the underlying conduct constitutes an act or procurement, such as an aggravated assault, there is an intent to commit the act and, thus, there exists the requisite intent to support attempted manslaughter.
Petitioner raises as his second point that the trial court erred in allowing the state to amend its bill of particulars after the presentation of its case. In response to this argument the district court noted that
the trial court responded to the State's request to amend by conducting an extensive inquiry into the matter, concluding that the determinative question was *935 whether prejudice to the defendant existed. Finding none, the court allowed the amendment.
We hold that the court was correct in that determination. There was absolutely no doubt as to the offenses for which defendant was being tried. Further, there was no indication that he was prejudiced or misled by the fact that the indictment used the date of the shooting, whereas the proof of death was a few hours later. On the contrary, it affirmatively appears there was no prejudice.
401 So.2d at 814. The district court's decision is a correct application of our holding in Hoffman v. State, 397 So.2d 288 (Fla. 1981). Petitioner argues that Hoffman is not controlling since in that case the state moved to amend its bill of particulars before it presented any evidence. We do not view the timing of the request to amend a bill of particulars as the determinative factor, although it is a relevant factor, in determining whether a defendant has been prejudiced. Hoffman makes it very clear that the determinative factor in allowing the state to amend its bill of particulars is whether such an amendment will prejudice the defendant. See Stang v. State, 421 So.2d 147 (Fla. 1982). We agree with the trial court and the district court that in this case there was no prejudice.
We therefore approve the decision of the district court of appeal.
It is so ordered.
ALDERMAN, C.J., and ADKINS, OVERTON, McDONALD and EHRLICH, JJ., concur.
NOTES
[1] At the time of this decision manslaughter was defined as the "`killing of a human being by the act, procurement or culpable negligence of another, in cases where such killing shall not be justifiable or excusable homicide nor murder, according to the provisions of this article... .'" 41 Fla. at 299, 26 So. at 186. This definition is essentially the same as that found in Florida's current manslaughter statute, section 782.07, Florida Statutes (1981):

The killing of a human being by the act, procurement, or culpable negligence of another, without lawful justification according to the provisions of chapter 776 and in cases in which such killing shall not be excusable homicide or murder, according to the provisions of this chapter, shall be deemed manslaughter and shall constitute a felony of the second degree, punishable as provided in s. 775.082, s. 775.083, or s. 775.084.
[2] E.g., Devoe v. Tucker, 113 Fla. 805, 152 So. 624 (1934); Kelly v. State, 78 Fla. 636, 83 So. 506 (1919); Hall v. State, 9 Fla. 203 (1860).
[3] In Kelly v. State, this Court upheld the conviction for assault with intent to commit manslaughter of a defendant who had shot a runaway reform school inmate with a shotgun. The Court found that the testimony was "legally sufficient as a predicate for a finding that the defendant unlawfully shot Leroy Cowart with intent to kill him, by means and in a manner that made the shooting an act of culpable negligence, which would have constituted manslaughter if death had ensued from the shooting." 78 Fla. at 641-42, 83 So. at 507. This statement, which equates shooting with intent to kill with an act of culpable negligence, is the source of the precedent by which this Court has held that one can intend to commit culpable negligence. We find that it was unnecessary for the court to have used the term "culpable negligence" in order to uphold the conviction in that case. Since there was evidence that the defendant intended to shoot the victim with a shotgun, the intent to kill could have been inferred despite the defendant's statements to the contrary. We therefore decide this case without invoking the concept of culpable negligence which should be limited to cases of involuntary manslaughter.