884 So.2d 112 (2004)
John A. ACOSTA, Appellant,
v.
STATE of Florida, Appellee.
No. 2D03-1711.
District Court of Appeal of Florida, Second District.
June 30, 2004.
Rehearing Denied August 6, 2004.
*113 Eilis S. Rubin and Robert I. Barrar of The Law Offices of Ellis S. Rubin and Robert I. Barrar, Miami, for Appellant.
Charles J. Crist, Jr., Attorney General, Tallahassee, and Donna S. Koch, Assistant Attorney General, Tampa, for Appellee.
ALTENBERND, Chief Judge.
John A. Acosta appeals his judgment for manslaughter and his sentence of 9.25 years in prison, followed by 3 years' probation. We affirm. Mr. Acosta raises five issues on appeal. We elect to discuss only his claim that he was entitled to a judgment of acquittal. Although the evidence suggests that John Acosta killed his victim with the first punch during an after-school fight among high school students, in light of all the circumstances, we conclude that the evidence permitted the jury to convict him of manslaughter.
John Acosta, seventeen, and the victim, James Brier, sixteen, were both students at Manatee High School. They went to a grocery store parking lot immediately after school on Thursday, October 18, 2001, to settle a disagreement. Like many high school fights, the disagreement that provoked this fight appears to be more of an excuse to fight than a rational reason for two people to resort to physical violence. James Brier had done something embarrassing at a party several weeks earlier. John Acosta had not been at the party and apparently did not even know James Brier, but he was one of many students who teased James Brier about the incident.
On the day of the fight, two carloads of students exchanged words while leaving the school parking lot. One car included John Acosta while the other included James Brier. The evidence at trial was conflicting concerning the details of who challenged whom to fight; nevertheless, after the two groups exchanged words, they discussed meeting in the grocery store parking lot to fight. John Acosta said, "Do you really want to fight?" James Brier responded, "Yes."
A sizable group of students gathered at the grocery store parking lot. John Acosta went to the parking lot as a passenger in the car of a friend. James Brier came with a group of friends in a truck. Other students came to watch the spectacle. After the teenagers exited their cars, a shouting match began. Apparently, other students began fighting before John Acosta hit James Brier. While the other fight was ongoing, James Brier was yelling at a boy named Snyder. Snyder was yelling back at James Brier. While Snyder and James Brier argued, John Acosta stood silently behind Snyder with his fists clenched. Suddenly, John Acosta threw a punch that hit James Brier in the face. The evidence indicates that James Brier was distracted at that moment and was unprepared to defend himself. James Brier crumpled to the ground and did not fight back. One witness testified that James Brier's eyes immediately began fluttering. John Acosta continued to hit *114 James Brier in the face while he was on the ground. Several witnesses told John Acosta to get off James Brier. Another witness testified that, before he released James Brier, John Acosta said, "I could have killed you." At this point, James Brier's body was limp and he was bleeding.
A postal worker on his lunch hour also happened to witness this fight. He testified that while eating his lunch under a nearby tree, he observed a dozen or more teenagers suddenly converge on the grocery store parking lot. He witnessed two "entourages" of boys moving toward one another, when a "fist shot out.... One kid stepped into the other and punched him in the face." He described the person who got punched as having his hands down and that "he just got caught[,] I think." The person who got punched "dropped like a rock" after the punch. Soon thereafter, the cars sped away.
When the fight ended, James Brier's friends carried him to the truck. The group then decided to take him to Manatee Memorial Hospital. Before reaching the hospital, they flagged down a police officer. The officer noticed a bloody, foamy froth coming from Mr. Brier's mouth. The officer realized the situation was serious and took pictures of Mr. Brier in the back of the truck. Mr. Brier was then rushed to the hospital, where he was pronounced dead.
The chief medical examiner for Manatee County testified that James Brier died as a result of a single blow to the right eye. This blow twisted his neck, creating a tear to the right vertebral artery. This tear caused blood to flood into James Brier's brain and spinal column. As a result of the vertebral artery hemorrhage and the rapid change of pressure in the central nervous system, the medical examiner explained that James Brier would not have remained standing for more than three seconds. The medical examiner testified that, although this type of death is rare, it is medically well documented.[1]
As a result of this fight, the State initially filed juvenile delinquency proceedings against John Acosta. In November 2001, however, shortly before his eighteenth birthday, these filings were replaced with an information alleging manslaughter by act or culpable negligence. John Acosta was first tried in August 2002, but the jury in that case could not reach a verdict. At a second trial in February 2003, the jury convicted him as charged.
John Acosta argues that his motion for judgment of acquittal should have been granted because the evidence was insufficient to support his conviction for manslaughter. He argues that the death was the result of a single blow, and most likely the first blow, of a fistfight between teenagers and that such an event cannot support a conviction for manslaughter.
It is true that courts have sometimes ruled that manslaughter is not established by a death resulting from a brief disagreement between two people. These cases tend to be very fact specific and involve shoving matches rather than fistfights. For example, in Aiken v. State, 425 So.2d 641 (Fla. 3d DCA 1983), the defendant was a homeless man searching for food in a dumpster. He was confronted by a man who did not want vagrants in his neighborhood. Mr. Aiken pushed the man backward with a milk crate that he was planning to use as a step to enter the dumpster. The man lost his balance, fell *115 backward, and hit his head on the pavement. The man died from the resulting skull fracture. The Third District ruled that this death was "excusable homicide" as a matter of law because no dangerous weapon was involved and the act was a matter of sudden combat not done in a cruel or unusual manner. Aiken, 425 So.2d at 643. Likewise, a shoving match that resulted in a heart attack has been declared insufficient to establish manslaughter. See Tipton v. State, 97 So.2d 277 (Fla.1957).
It is also true that merely participating in a drag race has been declared insufficient to convict a person of the death of another driver in the drag race, where the defendant's operation of his motor vehicle did not cause the accident. See Velazquez v. State, 561 So.2d 347 (Fla. 3d DCA 1990).
In this case, the evidence supported a jury determination that John Acosta started and finished the fight by forcefully hitting James Brier in the face. The jury could conclude that John Acosta hit James Brier when he was totally unprepared to defend himself. The participants had contemplated this fight for more than a few moments before it began. The jury was not compelled to find that the homicide was sudden combat or excusable. Martin v. State, 342 So.2d 501, 502 (Fla.1977); Weir v. State, 777 So.2d 1073 (Fla. 4th DCA 2001).
John Acosta was a bright young man, undoubtedly headed to college and a good future, when he chose to transform a verbal altercation into a fistfight. Thousands of teenage boys before him have engaged in similar, senseless fights without such tragic endings. On one hand, it seems such a waste of a human life to incarcerate him for nearly a decade at this critical time in his life. On the other hand, James Brier is dead. His family and loved ones will not have the opportunity to have him come home to them after a decade.
Sometimes we must remind ourselves that the primary purpose of sentencing is to punish the offender. See § 921.001(4)(a)(2), Fla. Stat. (2001). In that regard, the legislature has chosen to award 120 victim injury points for death in a manslaughter case, which virtually assures a defendant that he or she will spend approximately ten years in prison for the offense. See § 921.0024, Fla. Stat. (2001).
Likewise, criminal law was established to recognize the human desire for vengeance and to satisfy that craving in a way that helps preserve an orderly society. As best said by Oliver Wendell Holmes:
The first requirement of a sound body of law is, that it should correspond with the actual feelings and demands of the community, whether right or wrong. If people would gratify the passion of revenge outside of the law, if the law did not help them, the law has no choice but to satisfy the craving itself, and thus avoid the greater evil of private retribution.
Oliver Wendell Holmes, The Common Law 36 (Mark DeWolfe Howe ed., Harvard Univ. Press 1963) (1881).
The students of Manatee High School will never benefit from the death of James Brier or the imprisonment of John Acosta. However, perhaps the loss suffered by these two teenagers and their loved ones will serve as a reminder to other teenagers that fistfights are not an acceptable extracurricular activity in high school and that the consequences of those fights can be permanent and long-lasting.
Affirmed.
SILBERMAN and CANADY, JJ., Concur.
NOTES
[1] Indeed, there is at least one other recent case in which a vertebral artery hemorrhage resulted in a homicide conviction. See Miller v. State, 275 Ga. 730, 571 S.E.2d 788 (2002), cert. denied, 538 U.S. 1004, 123 S.Ct. 1911, 155 L.Ed.2d 835 (2003).