951 So.2d 91 (2007)
Erik Forrest HALL, Appellant/Cross-Appellee,
v.
STATE of Florida, Appellee/Cross-Appellant.
No. 2D01-3082.
District Court of Appeal of Florida, Second District.
March 14, 2007.
*92 Joseph Beeler and H. Eugene Lindsey of Ferrell Schultz Carter & Fertel, P.A., Miami, for Appellant/Cross-Appellee.
Bill McCollum, Attorney General, Tallahassee, and Diana K. Bock and C. Suzanne Bechard, Assistant Attorneys General, Tampa, for Appellee/Cross-Appellant.
EN BANC
STRINGER, Judge.
Erik Forrest Hall seeks review of his judgment and sentence for manslaughter, and the State has cross-appealed a ruling on a question of law. This case is another tragic instance of manslaughter by single punch to the head. Because the evidence supports the jury's verdict, we affirm Hall's conviction and sentence. Our affirmance renders the State's cross-appeal moot.
The parties dispute many of the facts regarding the events of the evening of December 27, 1999. The undisputed facts show that Hall and his family were vacationing in Fort Myers Beach from Michigan. The victim, Christopher Pobanz, was vacationing there with some friends from Illinois. Hall was thirty years old at the time; Pobanz was twenty-four. Both men had large builds: Hall stood approximately six feet six inches tall and weighed about 280 pounds, and Pobanz stood approximately six feet four inches tall and weighed about 200 pounds. Both men had been drinking.
Just prior to the encounter, Hall was standing on the deck of the Beached Whale, a restaurant in Fort Myers Beach. Pobanz and two of his friends were walking across the street when Pobanz threw a large rock toward the deck of the Beached Whale. The rock struck an innocent bystander in the back, causing her to fall to the ground. Hall did not witness the incident, but saw the bystander on the floor of the deck. The bystander, who did not know Hall personally, told Hall that someone had thrown a rock at her. Hall asked three men who were approaching the Beached Whale if they threw the rock, and the men pointed across the street to identify Pobanz as the perpetrator. Hall, who did not know Pobanz, yelled at Pobanz and his friends to stop. Pobanz and his friends turned and ran. Hall gave chase with his brother-in-law, another largely built man, close behind.
Hall caught up with Pobanz in the parking lot of a nearby beachfront resort, the Lani Kai. At this point, the facts become disputed. A sheriff's deputy testified that, while he was on foot patrol, he saw Hall and his brother-in-law running down the street toward the Lani Kai parking lot. He heard people at the Beached Whale yelling that there was going to be a fight. The deputy ran after the two men, shouting "Police. Stop running. I'll handle this." The deputy was about fifteen to twenty feet behind Hall. When he rounded a corner to turn into the Lani Kai parking lot, the deputy saw Pobanz talking with the security guard of the Lani Kai. Hall, his brother-in-law, and some other people *93 were "milling about." Pobanz was facing the security guard and gesturing in the other direction with his palm open. Hall "reared up" and struck Pobanz in the head. When he saw Hall "rearing up," the deputy said, "Stop. Police." Pobanz did not appear to see the blow coming.
The security guard of the Lani Kai testified that he intercepted Hall and his brother-in-law as they entered the Lani Kai parking lot. The men told the security guard that they were chasing someone who had thrown an object at someone else. According to the security guard, one or both of the men said they were going to "kill" the person who had thrown the rock. The security guard testified that he told Hall and his brother-in-law that he would call the sheriff's department to handle the matter. Pobanz then approached the security guard, and the security guard asked Pobanz if he was staying at the Lani Kai. As Pobanz gestured to a nearby hotel in response, Hall struck Pobanz with a single blow to the head. The security guard testified that Pobanz did not see the blow coming because he was looking in the opposite direction when it landed.
Hall and his brother-in-law denied speaking with the security guard. Hall said that a man tried to grab his arm as he ran onto the Lani Kai property, but he kept running. Neither man said that he was aware of the sheriff's deputy until after the blow was thrown. Hall testified that he told the deputy, "I wish I would have seen you and let you handle it." Both Hall and his brother-in-law testified that, as Hall approached, Pobanz raised his hands to strike Hall.
It is undisputed that Hall punched Pobanz one time in the jaw area and Pobanz dropped to the ground unconscious. Not one word had been exchanged between the two men. Realizing the gravity of the situation, Hall immediately backed off. Hall told officers at the scene that he regretted punching Pobanz and said he hoped Pobanz would be okay.
Unfortunately, the single punch had caused Pobanz's head to hyperextend or flex, severing a vertebral artery and causing a fatal brain hemorrhage. This is a very unusual occurrence that resulted more from the placement of the blow than the amount of force used. Even though an ambulance arrived quickly to render aid, Pobanz never regained consciousness. He was placed on life support upon his arrival at the hospital in the early morning hours of December 28 and pronounced dead the next day.
The State charged Hall with manslaughter by act, procurement, or culpable negligence. The jury was charged on both manslaughter by act and manslaughter by culpable negligence, and the jury found Hall guilty "as charged" on a general verdict form. The court sentenced Hall to 9.25 years' incarceration, which was the lowest permissible prison sentence for the second-degree felony even though Hall had no prior record. The lowest permissible sentence was significantly increased due to the mandatory imposition of victim injury points on Hall's Criminal Punishment Code scoresheet.
We find no merit in Hall's arguments on appeal and affirm his conviction and sentence. We write only to clarify what we believe is the status of the law as it pertains to the applicability of the crime of manslaughter by act to intentional acts that result in unintentional deaths. To do so, we elect to discuss only the arguments Hall raised on appeal pertaining to his entitlement to a judgment of acquittal.
Hall's first argument on appeal is that the trial court erred in denying his motion for judgment of acquittal because Hall's actions constituted excusable homicide *94 as a matter of law. This court will affirm the denial of a motion for judgment of acquittal if the verdict is supported by competent, substantial evidence. Fitzpatrick v. State, 900 So.2d 495, 507 (Fla. 2005). "If, after viewing the evidence in the light most favorable to the State, a rational trier of fact could find the existence of the elements of the crime beyond a reasonable doubt, sufficient evidence exists to sustain a conviction." Id. A trial court should not grant a judgment of acquittal "`unless the evidence is such that no view which the jury may lawfully take of it favorable to the opposite party can be sustained under the law.'" Id. (quoting Lynch v. State, 293 So.2d 44, 45 (Fla. 1974)).
Section 782.03, Florida Statutes (1999), provides:
Homicide is excusable when committed by accident and misfortune in doing any lawful act by lawful means with usual ordinary caution, and without any unlawful intent, or by accident and misfortune in the heat of passion, upon any sudden and sufficient provocation, or upon a sudden combat, without any dangerous weapon being used and not done in a cruel or unusual manner.
Hall argues that he punched Pobanz "in the heat of passion" and "upon a sudden combat." However, this argument has been rejected in analogous single-punch-to-the-head cases. See Acosta v. State, 884 So.2d 112 (Fla. 2d DCA), review denied, 891 So.2d 549 (Fla.2004); J.J.W. v. State, 892 So.2d 1189 (Fla. 5th DCA 2005); Weir v. State, 777 So.2d 1073 (Fla. 4th DCA 2001).
The facts of Acosta are closest to those here. In Acosta, the defendant was a high school student who killed the victim with a single blow to the head as the first punch in an after-school fight. 884 So.2d at 113. There had been tension between the two boys after the defendant made fun of the victim for doing something embarrassing at a party several weeks earlier. On the day of the fight, the defendant and the victim were in separate cars, each with a group of friends, leaving the school parking lot. There was a challenge to fight, and the two carloads of students met in a grocery store parking lot for the event.
At the parking lot, a fight broke out between a different set of people. While that fight was ongoing, the victim was yelling at yet another boy. At some point, the defendant threw a single punch to the victim's face, and the victim crumpled to the ground. Id. The victim had been distracted at the moment and was not prepared to defend himself. Id. The defendant continued to hit the victim in the face while he was on the ground and eventually stopped the beating on his own. Id. at 113-14.
The medical examiner testified that the victim died from the single punch to his face. Id. at 114. A jury convicted the defendant of manslaughter by act or culpable negligence. On appeal, the defendant argued that the trial court erred in denying his motion for judgment of acquittal because the defendant's actions constituted excusable homicide due to sudden combat. This court rejected this argument and affirmed the conviction. Id. at 115.
In doing so, this court reasoned that the defendant "started and finished the fight by forcefully hitting [the victim] in the face." Id. The court explained that the jury could have concluded that the defendant hit the victim when the victim was "totally unprepared to defend himself." Id.
As in Acosta, evidence that Hall started and finished the fight with a single punch when the victim was unprepared to defend himself was sufficient to support the jury's *95 verdict for manslaughter. The State presented evidence from which a jury could have rejected Hall's theory that Pobanz initiated "sudden combat" with Hall by throwing a rock toward the deck of the Beached Whale. The evidence showed that the rock struck an innocent bystander who was not known to either man. There was no evidence that Pobanz aimed the rock at Hall or that Pobanz showed any aggression toward Hall whatsoever. Even if he had, there was evidence that Hall chased Pobanz down and dodged intervention attempts by both a deputy sheriff and a hotel security guard before inflicting the fatal blow while Pobanz was otherwise distracted.
Hall's second argument on appeal is that the trial court erred in denying his motion for judgment of acquittal because the State failed to present sufficient evidence of manslaughter by act or manslaughter by culpable negligence. Hall argues that the State did not prove manslaughter by act because there was no evidence he intended to kill the victim. Hall also argues that the State did not prove manslaughter by culpable negligence because Hall intended to punch the victim in the face. It should be noted that these arguments were not made to this court in Acosta.
Hall's argument regarding the sufficiency of the evidence to support a conviction for manslaughter by act is dispositive of this issue. Hall argues that, in Taylor v. State, 444 So.2d 931, 933 (Fla.1983), the supreme court engrafted an intent-to-kill element onto the statutory definition of manslaughter by act. Hall argues that, under Taylor, a conviction for manslaughter by act cannot be sustained when the evidence does not support an intent to kill. We conclude that Hall's reading of Taylor is incorrect.
In Taylor, the supreme court considered as a question of great public importance whether the crime of attempted manslaughter existed in Florida. 444 So.2d at 933. In addressing the issue, the court rejected the petitioner's argument that, because manslaughter is necessarily an involuntary act, a person could not form an intent to commit that act to support an attempt conviction. The court relied on its previous decision in Williams v. State, 41 Fla. 295, 26 So. 184 (1899), in which it held that there existed a crime of assault with intent to commit manslaughter. The court noted that the holding in Williams was premised on the fact that manslaughter can include intentional killings. The Williams court concluded that there must be proof of an intent to kill to support a conviction for assault with intent to commit manslaughter. Taylor, 444 So.2d at 933. The court explained that "it must be found that the accused committed the assault with intent to take life, for although an unintentional or involuntary killing may in some cases be unlawful and a felony, no man can intentionally do an unintentional act; and without the intent the assault can not be punished under this statute." Id.
The Taylor court concluded, "By the same reasoning, it is not a logical impossibility for the crime of attempted manslaughter to exist in situations where, if death had resulted, the defendant could have been found guilty of voluntary manslaughter." Id. at 934. The court examined the facts in the case and determined that there was sufficient evidence to support a verdict of attempted manslaughter because there was sufficient proof that the defendant intended to kill the victim.
Contrary to Hall's assertion, we do not read Taylor to hold that the crime of manslaughter by act is limited to intentional killings. Adding such an intent element to the crime of manslaughter by act would *96 serve to elevate the crime above second-degree murder, which does not require a specific intent to cause death but only requires "a depraved mind." See § 782.04(2), Fla. Stat. (1999); Fla. Std. Jury Instr. (Crim.) 7.4. In fact, such a requirement would make the crime of manslaughter by act virtually indistinguishable from first-degree premeditated murder, which requires only a conscious intent to kill. § 782.04(1)(a)(1); Fla. Std. Jury Instr. (Crim.) 7.2. Moreover, if the crime of manslaughter by act did not include intentional acts that result in unintentional deaths, then there would be no applicable offense for such crimes. Perhaps the State could charge such acts as aggravated battery, but that crime is intended to punish intentional acts that result in "great bodily harm, permanent disability, or permanent disfigurement"; it is not intended to punish intentional acts that result in death. See § 784.045(1)(a)(1), Fla. Stat. (1999).
As we read the court's holding in Taylor, it was limited to determining that there was a crime of attempted manslaughter and determining the elements of that crime. The court's holding that an intent to kill is an element of attempted manslaughter does not require a determination that an intent to kill is an element of manslaughter by act. An intent to kill is required to commit an attempted manslaughter because no person can attempt to cause an unintentional death. This logic does not apply to the offense of manslaughter by act. Of course, if our holding today is erroneous, this opinion will necessarily conflict with Taylor.
We are aware that our decisions in Looney v. State, 756 So.2d 239 (Fla. 2d DCA 2000), and Jefferies v. State, 849 So.2d 401 (Fla. 2d DCA 2003), contain some language interpreting Taylor that could be construed to support Hall's argument. While those cases do not address the precise issue at hand, we recede from Looney and Jefferies to the extent that they are inconsistent with our opinion today. We are also aware that the standard jury instruction for manslaughter by act requires a finding that the defendant "intentionally caused the death of" the victim. Fla. Std. Jury Instr. (Crim.) 7.7. We do not read this instruction to require an intent to kill, however. We read this instruction to require an intentional act that "caused the death of" the victim.
In summary, we hold that a conviction for manslaughter by act does not require an intent to kill but only an intentional act that causes the death of the victim. We conclude that the evidence in this case supports a conviction for manslaughter by act. Because the jury was instructed on both manslaughter by act and manslaughter by culpable negligence and found Hall guilty on a general verdict form, his conviction will be sustained based on our finding that the evidence supports manslaughter by act. See Chamberlain v. State, 881 So.2d 1087, 1104 (Fla.2004). We decline to address Hall's arguments regarding manslaughter by culpable negligence because they are rendered moot by the use of the general verdict form.
Affirmed.
FULMER, C.J., and ALTENBERND, WHATLEY, NORTHCUTT, CASANUEVA, SALCINES, DAVIS, SILBERMAN, KELLY, CANADY, VILLANTI, WALLACE, and LaROSE, JJ., Concur.