952 So.2d 1266 (2007)
Sean Michael MORALES, Appellant,
v.
STATE of Florida, Appellee.
No. 2D06-1313.
District Court of Appeal of Florida, Second District.
April 11, 2007.
James Marion Moorman, Public Defender, and J.L. "Ray" LeGrande, Special Assistant Public Defender, Bartow, for Appellant.
Bill McCollum, Attorney General, Tallahassee, and Anne Sheer Weiner, Assistant Attorney General, Tampa, for Appellee.
STRINGER, Judge.
Sean Michael Morales seeks review of his conviction for attempted manslaughter. Morales argues that the trial court erred in denying his motion for judgment of *1267 acquittal and in giving a jury instruction for attempted second-degree murder. We conclude that neither issue has merit but write to explain why the State's evidence of Morales' intent was sufficient to withstand his motion for judgment of acquittal.
On May 6, 2004, Morales attended a party at the home of Charles Cardinal; Cardinal's girlfriend, Madison Brown; and their friend, Charles Retter. There were no arguments between anyone at the party. The guests left around 7:30 p.m., and Retter passed out drunk on his mattress in his bedroom between 8:30 and 9 p.m.
A few hours later, Morales returned to the home and knocked at the front door. Cardinal answered the door, and Morales asked if Retter was there. Cardinal told Morales that Retter was sleeping in his room. Morales pushed his way past Cardinal and walked down the hallway to Retter's room. Cardinal stayed in the living room and heard Morales yelling at Retter. Then Cardinal heard a gunshot. At that point, Morales ran out of Retter's room and said "I didn't mean to, I didn't mean to" on his way to the front door.
Retter, who had been passed out on his mattress, heard Morales enter his bedroom and opened his eyes. Retter was barely coherent and did not see a weapon or hear Morales yelling at him. Retter said that Morales walked into his bedroom, approached him, and exited about five seconds later. Retter felt an impact when Morales approached him, but Retter thought Morales had slapped him across the face.
Cardinal entered Retter's room as soon as Morales left the house, and it was apparent that Retter had been shot in the face. Retter did not know that he had been shot, and he tried to lie back down. Cardinal convinced Retter to look at his face in the bathroom mirror, and Retter agreed to stay awake for medical assistance. Retter was transported to medical facilities, where it was determined that the bullet had entered Retter's right cheek and lodged in the left temporal bone. The bullet missed Retter's carotid artery by a distance of approximately the thickness of a fingernail. Retter survived the ordeal but suffered permanent paralysis on the left side of his face. The bullet remains lodged in Retter's left temporal bone.
The State charged Morales with attempted first-degree murder, and a jury found him guilty of the lesser-included offense of attempted manslaughter. The court sentenced Morales to seven years in prison followed by five years of probation. On appeal, Morales argues that the trial court erred in denying his motion for judgment of acquittal because the State failed to prove that he intended to kill Retter.
This court will affirm the denial of a motion for judgment of acquittal if the verdict is supported by competent, substantial evidence. Fitzpatrick v. State, 900 So.2d 495, 507 (Fla.2005). "If, after viewing the evidence in the light most favorable to the State, a rational trier of fact could find the existence of the elements of the crime beyond a reasonable doubt, sufficient evidence exists to sustain a conviction." Id. A trial court should not grant a judgment of acquittal "`unless the evidence is such that no view which the jury may lawfully take of it favorable to the opposite party can be sustained under the law.'" Id. (quoting Lynch v. State, 293 So.2d 44, 45 (Fla.1974)).
The crime of attempted manslaughter exists when, if the victim had died, it would have been proper to convict the defendant for voluntary manslaughter. Taylor v. State, 444 So.2d 931, 934 (Fla. 1983). Because it would be impossible to attempt to commit an unintentional crime, the crime of attempted manslaughter requires an intent to kill. Id. However, this intent-to-kill element is distinguishable *1268 from a premeditated intent to kill, which requires a "`fully formed conscious purpose to kill'" formed long enough before the crime to allow for reflection on the nature of the act to be committed and its likely result. Chamberlain v. State, 881 So.2d 1087, 1105 (Fla.2004) (quoting Green v. State, 715 So.2d 940, 943 (Fla.1998)).
The supreme court has explained the distinction as follows:
"[T]here is nothing in the definition of manslaughter to exclude from its provisions all intentional homicides, or to include within the definition of murder all intentional killings, unless the intention is so deliberate as to amount to a premeditated design. The ordinary case of a sudden combat where the passions are aroused by sufficient provocation will furnish a pertinent illustration. Here there may be an intent to take life accompanied by an assault with a deadly weapon to carry out that intent. If the intent does not rise to the degree of a premeditated design, the killing will not be murder, but manslaughter."
Taylor, 444 So.2d at 933 (quoting Williams v. State, 41 Fla. 295, 26 So. 184, 186 (1899)).
In this case, the State presented evidence that Morales entered Retter's home late at night and shot him in the face at close range while he lay on his mattress in a stupor. This evidence establishes an intent to kill beyond a reasonable doubt. Accordingly, the verdict was supported by competent, substantial evidence, and the trial court did not err in denying Morales' motion for judgment of acquittal.
Affirmed.
FULMER, C.J., and CANADY, J., Concur.