VILLANTI, Judge.
 

 Merle Frances Zeigler appeals her conviction and sentence for second-degree murder, contending that the trial court committed fundamental error when it gave the standard jury instruction on the lesser-included offense of manslaughter by act because that instruction, as it existed at the time of Zeigler’s trial, improperly set out the intent required for a conviction for that offense. In support of her argument, she relies on the recent decision in
 
 Montgomery v. State,
 
 — So.3d-(Fla. 1st DCA 2009),
 
 review granted,
 
 11 So.3d 943 (Fla.2009). Because we find that the instructions given were not erroneous, we affirm Zeigler’s conviction and sentence and certify conflict with
 
 Montgomery.
 

 Zeigler was charged as a principal to second-degree murder with a firearm following the death of Frank Reposh. The evidence at trial established that Zeigler and Reposh had a long and often stormy relationship. Reposh also had a difficult relationship with Zeigler’s adult son, Joshua. Despite the tensions between Joshua and Reposh, Joshua was living with Zeig-ler and Reposh, along with Joshua’s girlfriend Debbie Meneely and their baby daughter, in a two-bedroom duplex.
 

 One evening during September or October 2005, Reposh and Joshua became involved in a verbal altercation. Zeigler was home at the time, but the accounts of her involvement in this altercation vary. However, it is undisputed that at some point during the evening Joshua armed himself with a knife. When Reposh tried to end the fight by leaving the duplex through the back door, Joshua charged at him and stabbed him in the abdomen.
 

 After the stabbing, Joshua sent Meneely to the store for peroxide and gauze to treat Reposh’s wound. When Meneely returned with these items, Reposh was in the bathroom, still bleeding profusely. Joshua ordered Meneely into her bedroom, and she went inside and closed the door.
 

 Some time later, Meneely heard a gunshot. When she opened the bedroom door, she saw Reposh lying face down on a sheet of plastic on the living room floor. At that point, Reposh was hog-tied, screaming, and still bleeding profusely. Meneely saw that Joshua was holding a handgun. Joshua told Meneely to go back into her bedroom and turn up the radio, and Meneely did so. A few minutes later she heard a second gunshot. She again opened the door to her room and saw Reposh “laying just dead gone.” Zeigler and Joshua later rolled Reposh up in the plastic sheeting and put him in the bathtub. Joshua also cut out and disposed of a bloody piece of the living room carpet.
 

 Reposh lay dead in the bathtub for three days. On the third day, Zeigler asked Meneely to borrow a van from a friend. Joshua, Zeigler, and Meneely then loaded Reposh’s dead body into the borrowed van,
 
 *1241
 
 and Meneely drove them to a deserted stretch of road. She dropped off Joshua and Zeigler with Reposh’s body and re-toned the van. Joshua and Zeigler then buried Reposh in a shallow grave and walked home.
 

 Reposh’s body was found eight months later, and the police investigation initially focused on Joshua, in part because of his criminal history. However, interviews with Zeigler’s friends and acquaintances, including the person from whom she regularly purchased drugs, led police to suspect that Zeigler was involved in Reposh’s murder as well. During those interviews, the police learned that Zeigler had told Me-neely that she (Zeigler) had fired the first shot at Reposh, but when Reposh did not die, Joshua fired the second shot. The police also learned that Zeigler had told her drug supplier that she had stabbed Reposh and then taken his money to “rent” the gun with which he was later shot. Zeigler told some acquaintances that she had fired both shots herself while she told others that Joshua had fired both shots but that she was going to take the rap for him so that he wouldn’t go back to prison.
 

 The police subsequently arrested Zeig-ler for Reposh’s murder, and she made numerous post-Miranda
 
 [1]
 
 statements. In those statements, Zeigler said that she had stabbed and shot Reposh and that Joshua had nothing to do with Reposh’s death. In addition to these statements, the evidence against Zeigler included forensic testing of the duct tape found wrapped around the remains of Reposh’s mouth, which revealed Zeigler’s fingerprints on the inside of the tape. The State’s theory at trial was that Joshua had stabbed Reposh, that Zeigler had then obtained a gun and shot Reposh once, and that when Reposh did not die from the first shot, Joshua fired the second shot. The State presented evidence that the first shot, while not immediately fatal, would have killed Reposh within a few hours.
 

 Zeigler testified in her own defense at trial and said that Joshua stabbed Reposh and fired both shots. She testified that although she was angry with Reposh on the night in question, she did not want to kill him and she did not believe that Joshua would kill him. She denied that she had procured the gun and testified that she had made up the statements about her own involvement because she was trying to protect Joshua. However, according to Zeigler, after Joshua pleaded guilty to Re-posh’s murder,
 
 [2]
 
 she no longer needed to protect Joshua and could finally tell the truth. Thus, her theory of defense was that while she was present during all of the events, she did not know the shooting was going to happen, she took no steps to assist in the shooting, and she never intended for Reposh to be killed. She provided no explanation for her fingerprints on the duct tape.
 

 During the charge conference, Zeigler agreed that the jury should be instructed on the lesser-included offense of manslaughter. The State requested that the jury be read the principals instruction, and, in response to that request, Zeigler requested that the court give the instruction on independent acts. Thus, the relevant instructions, given without any objection by Zeigler, explained the law to the jury as follows:
 

 To prove the crime of second degree murder, the State must prove the follow
 
 *1242
 
 ing three elements beyond a reasonable doubt:
 

 One, Frank Reposh is dead.
 

 Two, the death was caused by the criminal act of Merle Frances Zeigler.
 

 Three, there was an unlawful killing of Frank Reposh by an act imminently dangerous to another and demonstrating a depraved mind without regard for human life.
 

 An act includes a series of related actions arising from and performed pursuant to a single design or purpose.
 

 An act is imminently dangerous to another and demonstrating a depraved mind if it is an act or series of acts that:
 

 One, a person of ordinary judgment would know is reasonably certain to kill or do serious bodily injury to another;
 

 And two, is done from ill will, hatred, spite, or an evil intent;
 

 And three, is of such a nature that the act itself indicates an indifference to human life.
 

 hi order to convict of second degree murder it is not necessary for the State to prove the defendant had an intent to cause death.
 

 [[Image here]]
 

 To prove the crime of manslaughter the State must prove the following two elements beyond a reasonable doubt:
 

 One, Frank Reposh is dead;
 

 Two, Merle Frances Zeigler
 
 intentionally caused the death
 
 of Frank Re-posh.
 

 However, the defendant cannot be guilty [of] manslaughter if the killing was either justifiable or excusable homicide as I have previously explained those terms.
 

 In order to convict of manslaughter by intentional act it is not necessary for the State to prove that the defendant had a premeditated intent to cause death.
 

 If the defendant helped another person or persons commit a crime the defendant is a principal and must be treated as if she had done all the things the other person or persons did if:
 

 One, the defendant
 
 had a conscious intent that the criminal act be done;
 

 And two, the defendant did some act or said some word which
 
 was intended to
 
 and which did incite, cause, encourage,
 
 assist,
 
 or advise the other person or persons to actually commit the crime.
 

 To be a principal the defendant does not have to be present when the crime is committed.
 

 If you find that the crime alleged was committed, an issue in this case is whether the crime was an independent act of a person other than the defendant. An independent act occurs when a person other than the defendant commits or attempts to commit a crime, one,
 
 which the defendant did not intend to occur,
 
 and two, in which the defendant did not participate; and three, which was outside of and not a reasonably foreseeable consequence of the common design or unlawful act contemplated by the defendant. If you find the defendant was not present when the crime occurred, that in and of itself does not establish that the crime was an independent act of another. If you find that the crime was an independent act of Joshua Zeigler, then you should find the defendant not guilty.
 

 (Emphasis added.)
 

 The jury subsequently found Zeigler guilty of second-degree murder with a firearm, and it specifically found that she discharged the firearm causing the death of Reposh.
 

 In this appeal, Zeigler admits that she did not object to any of the instructions given by the court. However, she
 
 *1243
 
 contends that the trial court committed fundamental error when it instructed the jury on the lesser-included offense of manslaughter by act because the standard instruction in effect at the time of her trial erroneously added an “intent to kill” element to that offense. She contends that this erroneous instruction precluded the jury from convicting her of this lesser-included offense even if it found that she did not intend for Reposh to be killed. Instead, according to Zeigler, if the jury found she did not intend for Reposh to be killed, the jury was nevertheless essentially directed, by virtue of the improper instruction, to convict her of the greater offense of second-degree murder because that “greater” offense did not require an intent to kill while the “lesser” offense did. The State contends that the standard instruction was not erroneous and thus no error occurred. The State also argues that Zeigler’s intent was not disputed at trial because her defense was actual innocence and thus, even if the instruction was erroneous, it would not constitute fundamental error.
 

 Alleged errors in jury instructions, as with most other alleged errors at trial, must be preserved in the trial court to be cognizable on appeal. “Instructions ... are subject to the contemporaneous objection rule, and, absent an objection at trial, can be raised on appeal only if fundamental error occurred.”
 
 State v. Delva,
 
 575 So.2d 643, 644 (Fla.1991). In'the context of jury instructions, fundamental error arises only when the trial court fails to provide proper instructions on an issue that was disputed at trial.
 
 Id.; see also Reed v. State,
 
 837 So.2d 366, 369 (Fla.2002). Further, an error is fundamental only when it “reach[es] down into the validity of the trial itself to the extent that a verdict of guilty could not have been obtained without the assistance of the alleged error.”
 
 Brown v. State,
 
 124 So.2d 481, 484 (Fla.1960). Thus, to constitute fundamental error, an erroneous jury instruction must both relate to a disputed issue at trial and be so erroneous as to affect the validity of the guilty verdict.
 

 Here, we agree with Zeigler that the issue of her intent was disputed at trial. Zeigler admitted that she was present at the scene of Reposh’s murder, but she denied that she knew what Joshua was going to do and denied that she intended for Reposh to be killed. To rebut this defense, the State argued that even if Zeigler did not actually stab or shoot Re-posh, she assisted Joshua in doing so and could be guilty as a principal. To prove Zeigler guilty as a principal, the State had to prove that Zeigler
 
 intended
 
 to assist Joshua in committing the crime.
 
 See
 
 Fla. Std. Jury Instr. (Crim.) 3.5(a) (providing that to establish guilt as a principal, the State must prove that “the defendant did some act or said some word
 
 which was intended to and did ... assist
 
 or advise the other person ... to actually commit the crime”). Thus, the record supports Zeigler’s position that her intent was a disputed issue at trial.
 

 However, we do not agree with Zeigler that the instruction given on manslaughter by act was erroneous. In
 
 Hall v. State,
 
 951 So.2d 91, 96 (Fla. 2d DCA 2007) (en banc), this court addressed the issue of the intent required for the State to obtain a conviction for manslaughter by act and held that the State was not required to prove an intent to kill but only an intent to do the act that resulted in the death of the victim. In doing so, this court discussed the propriety of the standard jury instruction for manslaughter by act, stating:
 

 We are also aware that the standard jury instruction for manslaughter by act requires a finding that the defendant “intentionally caused the death of’ the
 
 *1244
 
 victim. Fla. Std. Jury Instr. (Crim.) 7.7. We do not read this instruction to require an intent to kill, however. We read this instruction to require an intentional act that “caused the death of’ the victim.
 

 Id.
 
 Thus, this court en banc concluded, admittedly in dicta, that the standard jury instruction on manslaughter by act in effect when Zeigler was tried did not improperly engraft an “intent to kill” element onto the crime of manslaughter by act and thus was not an erroneous instruction. Pursuant to
 
 Hall,
 
 because the standard instruction given at Zeigler’s trial was not erroneous, the trial court did not commit any error, much less fundamental error, when it gave that instruction.
 

 Two decisions issued since this court’s decision in
 
 Hall
 
 have called this court’s comment on the standard jury instruction for manslaughter by act into doubt. First, in December 2008, the supreme court modified the standard jury instruction for manslaughter by act, which now reads:
 

 In order to convict of manslaughter by intentional act, it is not necessary for the State to prove that the defendant had a premeditated intent to cause death, only an intent to commit an act which caused death.
 

 In re Standard Jury Instructions in Criminal Cases-Report No. 2007-10,
 
 997 So.2d 403, 403 (Fla.2008) (emphasis omitted). Thus, the instruction given in Zeig-ler’s case is no longer the standard instruction for manslaughter by act.
 

 Second, in
 
 Montgomery,
 
 the First District held that the standard instruction for manslaughter by act in effect prior to December 2008 was erroneous and that giving the instruction constituted fundamental error. — So.3d at-. In doing so, the First District reasoned:
 

 Unlike in the instruction for second-degree murder, there is no language in the instruction for manslaughter [by act] focusing on the defendant’s intent to do the act that caused the victim’s death, as opposed to intent to accomplish the result of death. The manslaughter by act instruction would be more accurate if it provided that the State was required to prove that the defendant “committed an intentional act that caused the death of the victim.” Because this language is not present, the instruction is misleading. The subsequent instruction that manslaughter does not require a premeditated design does not cure its defect, as both the court system and the average reasonable person recognize a distinction between a premeditated design and an instantaneous formation of intent.
 
 See, e.g., Carpenter v. State,
 
 785 So.2d 1182 (Fla.2001) (citation omitted) (noting the distinction between premeditated intent and “mere intent”);
 
 Green v. State,
 
 715 So.2d 940, 943 (Fla.1998) (citation omitted);
 
 Neal v. State,
 
 854 So.2d 666, 670 (Fla. 2d DCA 2003) (citations omitted). Accordingly, we hold that the instructions, as given, improperly imposed an additional element on the lesser-included offense of manslaughter.
 

 Id.
 
 at-. Thus, the decision in
 
 Montgomery
 
 conflicts with the dicta in this court’s en banc decision in
 
 Hall
 
 on the issue of whether the standard jury instruction for manslaughter by act in effect when Zeigler was tried is erroneous.
 

 Despite these two decisions, we believe that the
 
 Hall
 
 court was correct when it stated that the previous manslaughter by act instruction was not an erroneous statement of the law. Initially, we note that the standard jury instructions for criminal trials are presumed correct.
 
 See, e.g., Freeman v. State,
 
 761 So.2d 1055, 1071 (Fla.2000);
 
 Perriman v. State,
 
 731 So.2d 1243 (Fla.1999). As the
 
 Perriman
 
 court noted,
 

 
 *1245
 
 The Florida Standard Jury Instructions in Criminal Cases were designed to eliminate — or minimize — juror confusion concerning the applicable law in criminal cases. The instructions were researched and formulated by a committee of experts and then reviewed by this Court in an effort to eliminate imprecision. The charges were designed above all to be accurate and clear — and thus to withstand appellate scrutiny.
 

 Id.
 
 at-(footnote omitted). In light of this presumption of correctness, the defendant arguing that a standard jury instruction is so unclear as to be fundamentally erroneous carries a heavy burden.
 

 Moreover, our reading of the standard instruction does not find any misstatement of the law that would render the instruction fundamentally erroneous. While the standard instruction does require the State to prove that the defendant “intentionally caused the death” of the victim, the instruction does not end there. Fla. Std. Jury Instr. (Crim.) 7.7. Instead, it continues and states that to convict of “manslaughter by
 
 intentional act
 
 ” the State is
 
 not
 
 required to prove “that the defendant had a
 
 premeditated intent
 
 to cause death.” Fla. Std. Jury Instr. (Crim.) 7.7 (emphasis added). Thus, the totality of the instruction conveys to the jury that it is the
 
 act
 
 that must be intentional and that no intent to cause death is necessary. Because the jury instructions as a whole state the proper law, they are not erroneous.
 
 See Pensacola Elec. Co. v. Bissett,
 
 59 Fla. 360, 52 So. 367, 370 (1910) (“It is not required that a single instruction should contain all the law relating to the particular subject treated therein. In determining the correctness of charges and instructions, they should be considered as a whole, and if, as a whole, they are free from error, an assignment predicated on isolated paragraphs or portions, which, standing alone, might be misleading, must fail.”).
 

 Further, the fact that the supreme court has subsequently amended the standard instruction to better convey the distinction between the intent to commit the act and the intent to kill does not mean that the previous version was erroneous.
 
 See, e.g., Walker v. State,
 
 82 Fla. 465, 90 So. 376, 378 (1921) (holding that including the phrase “or lack of evidence” in the reasonable doubt instruction, which otherwise read that “[a] doubt which ... does not arise from the evidence is not a reasonable doubt” would make the instruction more clear but refusing to find that its omission rendered the instruction erroneous). Thus, because the instruction given at Zeigler’s trial properly stated the law, the subsequent modification of that instruction does not render the prior instruction erroneous as a matter of law.
 

 The
 
 Montgomery
 
 court’s decision to the contrary relies on the legal distinction between “a premeditated design” and “an instantaneous formation of intent,” — So.3d at-, to find that the standard instruction misstates the law. We find this argument unpersuasive because the standard instruction at issue did not refer to “a premeditated design” to kill. Further, it is unrealistic to assume that the average juror is going to recognize and be confused by a distinction between a “premeditated intent” and a simple “intent,” particularly in a case such as this in which no instruction on premeditation was given.
 

 Because we find that the standard jury instruction for manslaughter by act read at Zeigler’s trial, when considered as a whole, properly explained the law and the required intent, it was not an erroneous instruction. Therefore, the trial court did not commit fundamental error by giving that standard instruction. Accordingly, we affirm Zeigler’s conviction and sentence and certify conflict with
 
 Montgomery.
 

 
 *1246
 
 Conviction and sentence affirmed; conflict certified.
 

 WHATLEY and CRENSHAW, JJ., Concur.
 

 [1]
 

 .
 
 Miranda v. State,
 
 384 U.S. 436, 86 S.Ct. 1602, 16 L.Ed.2d 694 (1966).
 

 [2]
 

 . The State also charged Joshua with Re-posh's murder. He pleaded guilty to the charge before Zeigler’s trial.