DAVIS, Judge.
John Miguel Houston challenges his judgment and sentence for attempted second-degree murder, robbery, aggravated assault with a firearm, and two counts of carrying a concealed weapon. On appeal, he only argues that he is entitled to a new trial on the attempted second-degree murder count. Because the trial court erroneously instructed the jury with regard to that count, we reverse and remand for new trial only as to that count.
Houston robbed a man in the Ybor City area of Tampa. Houston did not brandish a weapon during the robbery. But as he attempted to leave, his victim called for police, and in response, Houston fired a gun at the victim from a distance of four or five feet. The victim was not hit by the shot.
In count one of the information, the State charged Houston with attempted first-degree murder. The jury returned a verdict of attempted second-degree murder on that count, and the trial court sentenced Houston to a minimum mandatory *2 twenty years’ imprisonment, followed by ten years’ probation.
At trial, in conjunction with that count, the trial court instructed the jury on attempted first-degree murder, attempted second-degree murder, and attempted manslaughter by act. The standard jury instruction for attempted manslaughter that the court read to the jury was as follows:
To prove the crime of attempted voluntary manslaughter, the state must prove the following element[s] beyond a reasonable doubt: John Miguel Houston committed, an act which was intended to cause the death of Frederick Powell and it would have resulted in the'death of Frederick Powell except that someone prevented John Miguel Houston from killing Frederick Powell or he failed to do so. However, the defendant cannot be guilty of attempted voluntary manslaughter if the attempted killing was either excusable or justifiable as I have previously explained those terms. It is not an attempt to commit manslaughter if the defendant abandoned the attempt to commit the offense or otherwise prevented its commission under circumstances indicating the defendant’s complete and voluntary renunciation of his criminal purpose.... In order to convict of attempted voluntary manslaughter, it is not necessary for the state to prove that the defendant had a premeditated intent to cause death.
(Emphasis added.)
Houston did not object to the instruction below, but on appeal he argues that it amounts to fundamental error in light of the Florida Supreme Court’s opinion in State v. Montgomery, 39 So.3d 252 (Fla.2010). In that case, the court determined that a previous version of the standard jury instruction for manslaughter was erroneous because it “required the jury to find that the defendant intended to kill the victim in order to convict Montgomery of manslaughter.” Id. at 257. In doing so, the court noted that section 782.087(1), Florida Statutes, the manslaughter statute, “does not impose a requirement that the defendant intend to kill the victim. Instead, it plainly provides that where one commits an act that results in death, and such an act is not lawfully justified or excusable, it is manslaughter.” Id. at 256. Here, Houston argues that the phrase “committed an act which was intended to cause the death of’ in the standard jury instruction for attempted manslaughter amounts to fundamental error because it similarly requires that the jury find that he possessed an intent to kill the victim in order to convict him of attempted manslaughter.
We agree with Houston that the phrase “committed an act which was intended to cause the death of’ impermissi-bly creates an intent-to-kill element in the crime of attempted manslaughter. Section 782.07(1), Florida Statutes (2008), defines “manslaughter” as “[t]he killing of a human being by the act, procurement, or culpable negligence of another, without lawful justification ... and in cases in which such killing shall not be excusable homicide or murder.” Section 777.04(1), Florida Statutes (2008), makes it a crime to “attempt[ ] to commit an offense prohibited by law- [if] in such attempt [one] does any act toward the commission of such offense, but fails in the perpetration or is intercepted or prevented in the execution thereof.” Nothing in this statutory scheme suggests that the crime of attempted manslaughter requires an intent to kill. See Bass v. State, 45 So.3d 970, 971 (Fla. 3d DCA 2010) (reviewing jury instruction on attempted voluntary manslaughter that included element that “defendant committed an act, which was in *3 tended to cause the death of [the victim]” and finding error, “based on Montgomery,” in the giving of that instruction); Lamb v. State, 18 So.3d 734, 735 (Fla. 1st DCA 2009) (“[T]he standard jury instruction for attempted manslaughter by act ... adds the additional element that the defendant ‘committed an act intended to cause the death’ of the victim when attempted manslaughter by act requires only an intentional unlawful act.”); see also Gonzalez v. State, 40 So.3d 60, 62 (Fla. 2d DCA 2010) (“At oral argument the State conceded that, based on Montgomery, Gonzalez’s conviction for attempted second-degree murder must be reversed due to the ... standard jury instruction for attempted manslaughter by intentional act which was read to the jury. Thus, we must reverse for a new trial on the attempted second-degree murder conviction.”).
We do note that the Fourth District in Williams v. State, 40 So.3d 72, 73-75 (Fla. 4th DCA 2010), has concluded that the standard jury instruction on attempted manslaughter does not possess the same fatal flaw as the standard jury instruction on manslaughter because “[a]s the Second District explained [in Hall v. State, 951 So.2d 91, 96 (Fla. 2d DCA 2007)], you cannot attempt to commit an unintentional act.” But we are not persuaded by the Fourth District’s application of our Hall language. It is true that in Hall this court stated the following:
The [supreme] court’s holding [in Taylor v. State, 444 So.2d 931 (Fla.1983),] that an intent to kill is an element of attempted manslaughter does not require a determination that an intent to kill is an element of manslaughter by act. An intent to kill is required to commit an attempted manslaughter because no person can attempt to cause an unintentional act.
Hall, 951 So.2d at 96. But this court included this statement in Hall in an attempt to distinguish Taylor from the facts at issue in Hall. The ultimate holding in Hall was “that a conviction for manslaughter by act does not require an intent to kill but only an intentional act that causes the death of a victim.” Id. As such, any discussion of the crime of attempted manslaughter in that case was nothing more than dicta. And while it may be true that no person can attempt to cause an unintentional act, a person can intend to commit an act, like firing a gun at another person, without intending to cause the death of that person.
We also note that it appears that Hall mischaracterized the intent element set forth in Taylor, as an “intent to kill.” See Hall, 951 So.2d at 96. In Taylor, the supreme court stated, “[T]here may be a crime of attempted manslaughter. We reiterate, however, that a verdict for attempted manslaughter can be rendered only if there is proof that the defendant had the requisite intent to commit an unlawful act.” 444 So.2d at 934 (emphasis added).
The State does point out here that in 2008, the Florida Supreme Court affirmatively declined to eliminate the intent element from the standard jury instruction on attempted voluntary manslaughter. See In re Standard Jury Instrs. in Crim. Cases-Report No. 2007-10, 997 So.2d 403, 404 (Fla.2008) (“ ‘[A] verdict for attempted manslaughter can be rendered only if there is proof that the defendant had the requisite intent to commit an unlawful act.’ ” (alteration in original) (quoting Taylor v. State, 444 So.2d 931, 934 (Fla.1983))). However, this refusal by the supreme court to amend the intent element of the attempted manslaughter standard jury instruction occurred well before Montgomery, and the issue that is squarely before *4 us in the instant case is whether Montgomery renders the standard jury instruction on attempted manslaughter erroneous. As such, no matter what the supreme court’s reasons were for not amending the instruction in 2008, they are not applicable to this case.[1]
We also agree with Houston that the giving of the instruction in this case amounted to fundamental error. In Montgomery, the supreme court stated:
Second-degree murder as a lesser included offense is one step removed from first-degree murder, and manslaughter as a lesser included offense is two steps removed from first-degree murder. In Pena [v. State, 901 So.2d 781, 787 (Fla.2005) ], we concluded that “when the trial court fails to properly instruct on a crime two or more degrees removed from the crime for which the defendant is convicted, the error is not per se reversible, but instead is subject to a harmless error analysis.” We explained that
the significance of the two-steps-removed requirement is more than merely a matter of number or degree. A jury must be given a fair opportunity to exercise its inherent “pardon” power by returning a verdict of guilty as to the next lower crime. If the jury is not properly instructed on the next lower crime, then it is impossible to determine whether, having been properly instructed, it would have found the defendant guilty of the next lesser offense.
39 So.2d at 259 (citation omitted). The court concluded that “because Montgomery’s conviction for second-degree murder was only one step removed from the necessarily lesser included offense of manslaughter ... fundamental error occurred ... which was per se reversible where the manslaughter instruction erroneously imposed upon the jury a requirement to find that Montgomery intended to kill [the victim].” Id. Applying this analysis, the erroneous instruction here constitutes fundamental error.
We therefore reverse for a new trial on attempted second-degree murder. In doing so, we also certify conflict with the Fourth District’s opinion in Williams v. State, 40 So.3d 72 (Fla. 4th DCA 2010). We otherwise affirm Houston’s convictions and sentences without comment.
Affirmed in part, reversed in part, and remanded.
NORTHCUTT and WALLACE, JJ., Concur.

. The Florida Supreme Court currently has before it a proposal of the Supreme Court Committee on Standard Jury Instructions in Criminal Cases to amend the standard jury instruction on attempted manslaughter by removing the phrase "intended to cause the death of (the victim)” and adding the word "intentionally” before "committed an act.” See Florida Supreme Court Publication Notice, available at http://www.floridasupreme court.org/decisions/probin/ sc 10-2434_Publi-cationNotice.pdf. If this proposal is approved by the supreme court, the new standard jury instruction on attempted manslaughter would instead read, "(Defendant) intentionally committed an act which would have resulted in the death of (victim) except someone prevented (defendant) from killing (victim) or [he] [she] failed to do so.” Id.