MAY, J.
 

 The defendant appeals his conviction and sentence for attempted second degree murder, a lesser included offense of attempted first degree murder. He raises a single issue: fundamental error in the standard jury instruction on attempted voluntary manslaughter. We affirm.
 

 The defendant’s charges arise out of a brutal stabbing of his ex-girlfriend in her home while their ten-month-old daughter was present. The victim sustained multiple stab wounds to her face, stomach, chest, leg, and side. When the victim tried to flee from the defendant, he grabbed her by the neck of her clothes and continued to stab her. The defendant pulled the victim back into the house, locked the door, and stabbed her whenever she tried to move toward the door.
 

 The police apprehended the defendant later that night. The defendant told police that the victim tried to start a fight with him and wanted to cut him, he wrestled with the victim, and the victim fell on the knife. Later, he told the police that he did not know what happened because “the evil spirit just move upon me, evil.”
 

 During the charge conference, the defendant requested instructions on attempted second degree murder, attempted voluntary manslaughter, and aggravated battery. The trial court instructed the jury on attempted voluntary manslaughter as follows:
 

 To prove the crime of attempted voluntary manslaughter, the State must prove the following beyond a reasonable doubt: That Mr. Williams committed an act which was intended to cause the death of Ms. Lindsay and would have resulted in the death of Ms. Lindsay except that someone prevented [] Mr. Williams from killing Ms. Lindsay or he failed to do so, however, the Defendant cannot be guilty of attempted voluntary manslaughter if the attempted killing was either excusable or justifiable as I have previously explained those terms. It is not an attempt to commit manslaughter if the Defendant abandoned the attempt to commit the offense or otherwise prevented its commission under circumstances indicating a complete and voluntary renunciation of his criminal purpose. In order to convict of attempted voluntary manslaughter, it is not necessary for the State to prove that the Defendant had a premeditated intent to cause death.
 

 (Emphasis added). During the State’s closing argument, a portion of the instruction was repeated. The defendant was convicted of the lesser included offense of attempted second degree murder.
 
 [1]
 

 ri] The defendant argues the trial court fundamentally erred in giving the standard jury instruction on attempted manslaughter because it required the jury to find the defendant intentionally attempted to kill the victim. The defendant relies on
 
 Montgomery v. State,
 
 — So.3d
 
 *74
 
 —, —, 34 Fla. L. Weekly D360, 2009 WL 350624, *1 (Fla. 1st DCA 2009),
 
 approved by
 
 39 So.3d 252 (Fla. 2010).
 

 The State responds there was no fundamental error in giving the standard jury instruction because it required only that the defendant intend an act to cause the death of the victim.
 
 See Hall v. State,
 
 951 So.2d 91 (Fla. 2d DCA 2007). The State further argues that this case differs from
 
 Montgomery
 
 because the instruction at issue concerns “attempted” manslaughter, not manslaughter, and our Supreme Court has not required a similar amendment to the standard jury instruction on the inchoate crime. We find the distinction an important one.
 

 The First District held that because “intent to kill is not an element of manslaughter by act, ... the trial court fundamentally erred in giving instructions that suggested the State was required to prove intent to kill to prove the crime of manslaughter.”
 
 Id.
 
 at -. The Supreme Court agreed.
 
 Montgomery,
 
 39 So.3d 252. The court found that because the crime of manslaughter by act does not require proof of intent to kill the victim, the instruction was confusing to the average juror.
 
 Id.
 
 at 255-58.
 

 Our Supreme Court recently reviewed the standard jury instruction on manslaughter in
 
 Montgomery.
 
 There, the trial court instructed the jury that the State had to prove “two things: The first being again that [the victim] is dead and, secondly, that Mr. Montgomery intentionally caused her death ... it is not necessary for the state to prove that the defendant had a premeditated design to cause death.” — So.3d at -, 2009 WL 350624, at *1 (emphasis added). The jury convicted Montgomery of second degree murder, not manslaughter.
 

 In fact, there have been two amendments to the manslaughter jury instruction since the Montgomery trial. The first occurred in December 2008; the second in April 2010.
 
 In re Standard Jury Instructions in Criminal Cases-Report No. 2007-10,
 
 997 So.2d 403 (Fla.2008);
 
 In re Amendments to Standard Jury Instructions in Criminal Cases-Instruction 7.7,
 
 41 So.3d 853 (Fla. 2010).
 

 The 2008 amendment added a clause to the end of the last sentence, emphasizing the intent requirement was related to the commission of an act which caused death. 997 So.2d at 403. The 2010 amendment deleted the word “intentionally” before the phrase “caused the death.” 41 So.3d at 854.
 

 In
 
 Montgomery,
 
 our Supreme Court reiterated “the relevant intent is the intent to commit an act which caused death, and the State is not required to prove that the defendant intended to kill the victim.”
 
 Montgomery, 39
 
 So.3d at 257 (citation omitted). Finally, the court found the use of the standard jury instruction on manslaughter constituted fundamental error.
 
 Id.
 
 at 257-59.
 

 This case presents a similar, but not identical issue for review. As in
 
 Montgomery,
 
 the defendant did not contemporaneously object to the attempted manslaughter instruction. We therefore apply the same fundamental error analysis used in
 
 Montgomery.
 
 Specifically, the issue is whether fundamental error resulted from the giving of the standard jury instruction on attempted manslaughter. We find no fundamental error occurred here.
 

 The jury instruction at issue is for attempted manslaughter; not manslaughter. Significantly, the elements of those crimes differ. “[Ajttempted manslaughter is a general intent crime, requiring only an intentional act, rather than a specific intent to kill.”
 
 Montgomery,
 
 — So.3d at —, 2009 WL 350624, at *4. In other words, the crime of attempted manslaughter requires an intent to commit an
 
 *75
 
 unlawful act that would have resulted in the victim’s death rather than an intent to kill.
 
 Taylor v. State,
 
 444 So.2d 931, 934 (Fla.1983). Nevertheless, language from
 
 Taylor
 
 seems to have created some confusion about the elements of attempted manslaughter and the proper wording of a jury instruction on the charge.
 

 In
 
 Taylor,
 
 our Supreme Court held that attempted manslaughter is a cognizable crime in the State of Florida. In reaching its decision, the court discussed a defendant’s intent to kill as an element of the crime. Subsequently, the Second District addressed that language in
 
 Hall v. State,
 
 951 So.2d 91 (Fla. 2d DCA 2007).
 

 Hall was convicted of manslaughter for the death of a victim from a single blow to the head. Relying on
 
 Taylor,
 
 Hall argued that a judgment of acquittal should have been entered because the State failed to prove the requisite intent to kill. The Second District concluded “that Hall’s reading of
 
 Taylor
 
 [was] incorrect.”
 
 Id.
 
 at 95.
 

 [W]e do not read
 
 Taylor
 
 to hold that the crime of manslaughter by act is limited to intentional killings. Adding such an intent element to the crime of manslaughter by act would serve to elevate the crime above second-degree murder, which does not require a specific intent to cause death but only requires “a depraved mind.”
 

 Id.
 
 at 95-96. The Second District explained that an intent to kill is an element of attempted manslaughter “because no person can attempt to cause an unintentional death.”
 
 Id.
 
 at 96. However, such intent is not an element of manslaughter.
 

 Our Supreme Court has now clarified the elements of both manslaughter and attempted manslaughter, and has relegated
 
 Taylor’s
 
 reference to “an intent to kill” to dicta.
 
 Montgomery,
 
 39 So.3d at 256-57. Any confusion about what noun the adjec-five “intent” modified was put to rest in
 
 Montgomery.
 

 Here, the trial court instructed the jury: “To prove the crime of attempted voluntary manslaughter, the State must prove ... Mr. Williams committed an act which was intended to cause the death of Ms. Lindsay .... ” The error that occurs by instructing the jury that “an intent to kill” is an element of manslaughter does not exist when instructing the jury that the defendant committed an act which was intended to cause the death of the victim. As the Second District explained, you cannot attempt to commit an unintentional act.
 
 Hall,
 
 951 So.2d at 96. This may explain why the Supreme Court has not amended the attempted manslaughter instruction, even though it has twice amended the manslaughter instruction within the last two years.
 

 We also agree with the State that, as worded, the instruction did not confuse this jury. The jury found the defendant guilty of attempted second degree murder, which necessarily means the jury found the defendant “intentionally committed an act” that would have resulted in the death of the victim and that the act was imminently dangerous to another and demonstrated a depraved mind, without regard for human life.
 
 See
 
 Fla. Std. Jury Instr. (Crim.) 6.4. Thus, the jury found the defendant intended the act that was “imminently dangerous” and demonstrated a “depraved mind.” Having been charged with attempted first degree murder, the jury exercised its inherent “pardon” power by returning a verdict for second degree murder.
 

 For these reasons, we find this case distinguishable from
 
 Montgomery,
 
 but certify the following questions of great public importance:
 

 
 *76
 
 (1) Does the standard jury instruction on attempted manslaughter constitute fundamental error?
 

 (2) Is attempted manslaughter a viable offense in light of
 
 State v. Montgomery,
 
 39 So.3d 252, 2010 WL 1372701 (Fla. Apr. 8, 2010)?
 

 We also note the First District has reached a contrary decision in
 
 Lamb v. State,
 
 18 So.3d 734 (Fla. 1st DCA 2009). We therefore certify conflict with that decision.
 

 Affirmed.
 

 WARNER and TAYLOR, JJ., concur.
 

 [1]
 

 . The jury also found the defendant guilty of burglary of a dwelling with an assault or battery while armed and false imprisonment with a weapon.