# Supreme Court of Florida

_____

No. SC10-1458
_____

**AMOS AUGUSTUS WILLIAMS,**
Petitioner,

vs.

**STATE OF FLORIDA,**
Respondent.

[February 14, 2013]
**<u>CORRECTED OPINION</u>**

LABARGA, J.

This case is before the Court for review of the decision of the Fourth District

Court of Appeal in <u>Williams v. State</u>, 40 So. 3d 72 (Fla. 4th DCA 2010).  In its

decision, the district court certified the following questions to be of great public

importance:

> (1) DOES THE STANDARD JURY INSTRUCTION ON
> ATTEMPTED MANSLAUGHTER CONSTITUTE
> FUNDAMENTAL ERROR?
>
> (2) IS ATTEMPTED MANSLAUGHTER A VIABLE OFFENSE IN
> LIGHT OF <u>STATE V. MONTGOMERY</u>, 39 So. 3d 252 [(Fla.
> 2010)]?

See Williams, 40 So. 3d at 76.[1] The Fourth District also certified express and direct conflict with Lamb v. State, 18 So. 3d 734 (Fla. 1st DCA 2009). As explained below, we answer both certified questions in the affirmative. We held in State v. Montgomery, 39 So. 3d 252 (Fla. 2010), that giving the standard jury instruction for the completed crime of manslaughter by act—which required the jury to find that the defendant intended to kill the victim—is fundamental error when the defendant is convicted of an offense not more than one step removed from manslaughter because the manslaughter statute does not require an intent to kill. Id. at 259. We now hold that giving the standard jury instruction on attempted manslaughter by act—which also requires the jury to find the defendant committed an act intended to cause death—similarly constitutes fundamental error where the defendant is convicted of an offense not more than one step removed from attempted manslaughter. The crime of attempted manslaughter by act does not require the State to prove, or the jury to find, that the defendant intended to kill the victim.

---

1. We have jurisdiction. See art. V, § 3(b)(3), (4), Fla. Const. Although the Fourth District certified the second question, the district court did not pass on that question. Article V, section 3(b)(4), of the Florida Constitution provides this Court with discretionary jurisdiction to review, in pertinent part, decisions in which the district court "passes upon a question certified by it to be of great public importance." Our discretionary review jurisdiction is therefore based on the first certified question and the certified conflict. As we explain below, because we have jurisdiction based on the first certified question and the certified conflict, we answer both certified questions.

Accordingly, we quash the decision of the Fourth District in <u>Williams</u> and approve the decision in <u>Lamb</u>, in which the First District held that the trial court committed fundamental error by giving the standard jury instruction on attempted manslaughter by act because it added the element that the defendant "committed an act intended to cause the death" of the victim. <u>Lamb</u>, 18 So. 3d at 735. We also hold that the offense of attempted manslaughter remains a viable offense. We turn first to the facts of this case.

## FACTS AND PROCEDURAL HISTORY

Amos Augustus Williams was charged with the attempted first-degree murder of his ex-girlfriend Samantha Lindsay in 2006. The facts are set forth in the opinion of the district court as follows:

> The defendant's charges arise out of a brutal stabbing of his ex-girlfriend in her home while their ten-month-old daughter was present. The victim sustained multiple stab wounds to her face, stomach, chest, leg, and side. When the victim tried to flee from the defendant, he grabbed her by the neck of her clothes and continued to stab her. The defendant pulled the victim back into the house, locked the door, and stabbed her whenever she tried to move toward the door.
> The police apprehended the defendant later that night. The defendant told police that the victim tried to start a fight with him and wanted to cut him, he wrestled with the victim, and the victim fell on the knife. Later, he told the police that he did not know what happened because "the evil spirit just move upon me, evil."

<u>Williams</u>, 40 So. 3d at 73. The defendant requested jury instructions on lesser included offenses, including attempted manslaughter by act. The jury instruction for attempted manslaughter by act, which is at issue in this case, was given

- 3 -

consistent with the standard instruction as it existed in 2006 when the crime was committed and as it currently exists, in pertinent part, as follows:

> To prove the crime of attempted voluntary manslaughter, the State must prove the following beyond a reasonable doubt:  That Mr. Williams committed an act which was intended to cause the death of Ms. Lindsay and would have resulted in the death of Ms. Lindsay except that someone prevented [ ] Mr. Williams from killing Ms. Lindsay or he failed to do so . . . .

Williams, 40 So. 3d at 73 (emphasis added).  The instruction also advised the jury:

> In order to convict [defendant] of attempted voluntary manslaughter, it is not necessary for the State to prove that the Defendant had a premeditated intent to cause death.

Id. (emphasis omitted).  No defense objection was made to the instruction and Williams was ultimately convicted of attempted second-degree murder, as well as burglary of a dwelling with an assault or battery while armed and false imprisonment with a weapon.  Id.

On appeal to the Fourth District, Williams contended that giving the instruction constituted fundamental error similar to that found by this Court in Montgomery as to the standard instruction for the completed offense of manslaughter by act.  Because the legal effect of this Court's decision in Montgomery is critical to determination of the certified questions and resolution of the certified conflict in this case, that decision will be discussed first.

In Montgomery, we recognized that the then-existing standard jury instruction for the offense of manslaughter by act required the jury to find that the

defendant "intentionally caused the death" of the victim. <u>Montgomery</u>, 39 So. 3d at 257; <u>see</u> Fla. Std. Jury Instr. (Crim.) 7.7 (2006). We also recognized that section 782.07, Florida Statutes, did not require the jury to make such a finding. Section 782.07 provided in pertinent part as follows:

> **782.07  Manslaughter; aggravated manslaughter of an elderly person or disabled adult; aggravated manslaughter of a child; aggravated manslaughter of an officer, a firefighter, an emergency medical technician, or a paramedic.—**
>
> (1) The killing of a human being by the act, procurement, or culpable negligence of another, without lawful justification according to the provisions of chapter 776 and in cases in which such killing shall not be excusable homicide or murder, according to the provisions of this chapter, is manslaughter, a felony of the second degree, punishable as provided in s. 775.082, s. 775.083, or s. 775.084.

§ 782.07(1), Fla. Stat. (2006). The statute remains in this same form today. In discussing the requirements of the manslaughter statute, we stated in <u>Montgomery</u>:

> We observe that the statute does not impose a requirement that the defendant intend to kill the victim. Instead, it plainly provides that where one commits an act that results in death, and such an act is not lawfully justified or excusable, it is manslaughter.

<u>Montgomery</u>, 39 So. 3d at 256. This Court concluded that giving this erroneous jury instruction constituted fundamental error because Montgomery was convicted of second-degree murder, one step removed from manslaughter, and because he was entitled to a correct instruction on manslaughter. We further explained in <u>Montgomery</u> that "[a]lthough in some cases of manslaughter by act it may be inferred from the facts that the defendant intended to kill the victim, to impose

- 5 -

such a requirement on a finding of manslaughter by act would blur the distinction between first-degree murder and manslaughter." Id. at 256. "Moreover, it would impose a more stringent finding of intent upon manslaughter than upon second-degree murder, which, like manslaughter, does not require proof that the defendant intended to kill the victim." Id.

We also recognized in Montgomery that the jury in that case was instructed, similar to the instruction in the instant case, that "[i]n order to convict of manslaughter by intentional act, it is not necessary for the State to prove that the defendant had a premeditated intent to cause death." Montgomery, 39 So. 3d at 256 (quoting Fla. Std. Jury Instr. (Crim.) 7.7 (2006)). Even so, we concluded that this additional phrase did not alleviate the fundamental error. We explained:

> Although the instruction also provided that "it is not necessary for the State to prove that the defendant had a premeditated intent to cause death," we conclude that this language was insufficient to erode the import of the second element: that the jury must find that the defendant intended to cause the death of the victim.

Id. at 257. After issuance of our opinion in Montgomery, we issued an interim corrected manslaughter by act instruction[2] and in 2011 we issued the following final amended instruction for manslaughter by act:

**To prove the crime of Manslaughter, the State must prove the following two elements beyond a reasonable doubt:**

---

2. See In re Amendments to Standard Jury Instructions in Criminal Cases—Instruction 7.7, 41 So. 3d 853, 854-55 (Fla. 2010).

- 6 -

**1.** (Victim) **is dead.**

*Give 2a, 2b, or 2c depending upon allegations and proof.*

**2. a.** (Defendant) **intentionally committed an act or acts that caused the death of** (victim).

**b.** (Defendant) **intentionally procured an act that caused the death of** (victim).

**c. The death of** (victim) **was caused by the culpable negligence of** (defendant).

. . . .

*Give only if 2a alleged and proved.*

**In order to convict of manslaughter by act, it is not necessary for the State to prove that the defendant had an intent to cause death, only an intent to commit an act that was not merely negligent, justified, or excusable and which caused death.**

In re Amendments to Standard Jury Instructions in Criminal Cases—Instruction 7.7, 75 So. 3d 210, 211-12 (Fla. 2011) (strikethroughs and underlining omitted).[3]

## ANALYSIS

We turn now to the question of whether the standard jury instruction for the offense of attempted manslaughter by act gives rise to fundamental error, just as we concluded the standard instruction for the completed crime of manslaughter did in Montgomery. We hold, consistent with our holding in Montgomery, that a trial court commits fundamental error in giving the standard jury instruction on

_____

3. As to proposed amendment of Standard Jury Instruction 6.6, Attempted Voluntary Manslaughter, the issue was presented in In re: Standard Jury Instructions in Criminal Cases—Report 2010-05, SC10-2434. On May 24, 2011, Instruction 6.6 was severed from that case to be considered in In re: Standard Jury Instructions in Criminal Cases—Instruction 6.6 and Instructions 25.9-25.12, SC11-1010. Thereafter, on March 19, 2012, instruction 6.6 was severed from that case and placed for consideration in In re: Standard Jury Instructions in Criminal Cases—Instruction 6.6 and Instructions 25.9-25.13, SC12-462.

attempted manslaughter by act where the defendant is convicted of a crime no more than one step removed from the improperly instructed offense. As we made clear in Montgomery, the manslaughter statute does not impose a requirement that the defendant intend to kill the victim. Similarly, in order to convict a defendant for an attempted manslaughter, there is no requirement that the defendant intend to kill the victim but for some reason failed to do so. We have held that if the State is not required to show specific intent to successfully prosecute a completed crime, it will not be required to show specific intent to successfully prosecute an attempt to commit that crime. See Gentry v. State, 437 So. 2d 1097, 1099 (Fla. 1983). The crime of attempted manslaughter exists "in situations where, if death had resulted, the defendant could have been found guilty of voluntary manslaughter [manslaughter by act]." See Murray v. State, 491 So. 2d 1120, 1122 (Fla. 1986) (quoting Taylor v. State, 444 So. 2d 931, 934 (Fla. 1983)). Because we have now clarified that the crime of manslaughter by act does not require an intent to kill, we are constrained to similarly hold that the crime of attempted manslaughter by act does not require an intent to kill.

The Fourth District attempted to uphold the standard jury instruction on attempted manslaughter by act by stating that "[t]he error that occurs by instructing the jury that 'an intent to kill' is an element of manslaughter does not exist when instructing the jury that the defendant committed an act which was intended to

cause the death of the victim." Williams, 40 So. 3d at 75. This is a distinction without a difference. The attempted manslaughter by act instruction clearly required an intent to cause the death of the victim, which we have held to be error under the manslaughter statute. The district court also justified its decision in this case by noting that this Court did not amend the attempted manslaughter jury instruction when it amended the manslaughter instruction in 2011 after the Montgomery decision was issued. See Williams, 40 So. 3d at 75. However, this fact has no bearing on whether the instruction is erroneous.[4]

Lastly, the district court in Williams concluded:

[A]s worded, the instruction did not confuse this jury. The jury found the defendant guilty of attempted second degree murder, which necessarily means the jury found the defendant "intentionally committed an act" that would have resulted in the death of the victim and that the act was imminently dangerous to another and demonstrated a depraved mind, without regard for human life.

Williams, 40 So. 3d at 75. However, because the jury found Williams guilty of attempted second-degree murder, an offense not requiring proof of intent to cause

---

4. We have made clear that in authorizing the publication and use of a standard jury instruction, "we express no opinion on its correctness and remind all interested parties that this authorization forecloses neither requesting additional or alternative instructions nor contesting the legal correctness of the instruction." In re Standard Jury Instructions—Instruction 7.7, 75 So. 3d at 211. Moreover, the Court's apparent inaction at that time was not an indication of this Court's tacit approval of the existing instruction. See supra note 3. Even if this Court's inaction had been intended to indicate approval of the existing attempted manslaughter instruction, such would not necessarily cure any fundamental error that might exist in that instruction.

the death of the victim, it must have determined that Williams did not intend to cause the victim's death. And, because the instruction given for attempted manslaughter by act erroneously included an intent to kill element, the jury was left with attempted second-degree murder as the only viable lesser included offense under the instructions given.[5] Thus, a correct attempted manslaughter by act instruction was critical to what the jury had to consider in this case to determine if Williams was guilty of attempted first-degree murder, attempted second-degree murder, or attempted manslaughter by act.

This Court explained in Garzon v. State, 980 So. 2d 1038 (Fla. 2008):

> We have consistently held that not all error in jury instructions is fundamental error. . . . Further, " 'fundamental error occurs only when the omission is pertinent or material to what the jury must consider in order to convict.' Failing to instruct on an element of the crime over which the record reflects there was no dispute is not fundamental error. . . ."

Id. at 1042 (quoting State v. Delva, 575 So. 2d 643, 645 (Fla. 1991) (citation omitted) (quoting Stewart v. State, 420 So. 2d 862, 863 (Fla. 1982)).

In Reed v. State, 837 So. 2d 366 (Fla. 2002), we made clear that if an erroneous instruction is given as to a disputed element of the offense, and the instruction is pertinent or material to what the jury must consider in order to

_____

5. There is no crime of attempted manslaughter by culpable negligence. See Tillman v. State, 471 So. 2d 32, 33 (Fla. 1985) (citing Taylor, 444 So. 2d at 934). Thus, the jury was not instructed on attempted manslaughter by culpable negligence.

- 10 -

convict, it is fundamental error; and "fundamental error is not subject to harmless error review." Id. at 369-70. In finding the instruction to be fundamental error in Montgomery, we focused on the fact that the manslaughter by act instruction was "pertinent or material to what the jury must consider in order to convict," and emphasized the defendant's right to have the jury correctly instructed. Montgomery, 39 So. 3d at 258 (quoting Delva, 575 So. 2d at 645). We concluded in Montgomery "that fundamental error occurred in this case, where Montgomery was indicted and tried for first-degree murder and ultimately convicted of second-degree murder after the jury was erroneously instructed on the lesser included offense of manslaughter." Montgomery, 39 So. 3d at 258. Thus, where the erroneous instruction applies to an element of the crime that is in dispute and "is pertinent or material to what the jury must consider" to convict, an erroneous jury instruction will be found to be fundamental error where the defendant is convicted of a crime no more than one step removed from the improperly instructed offense.[6] This is true regardless of whether there is ample evidence to convict the defendant

6. We held in Pena v. State, 901 So. 2d 781, 787 (Fla. 2005), that when the trial court fails to properly instruct on a crime two or more degrees removed from the crime for which the defendant is convicted, the error is subject to a harmless error analysis. However, as we held in Montgomery, when the court fails to properly instruct on an offense only one step removed from the crime for which the defendant is convicted and the instruction is pertinent or material to what the jury must consider to convict and concerns a matter in dispute, Reed, 837 So. 2d at 369, the error is fundamental. Montgomery, 39 So. 3d at 259.

of the higher crime. "[W]hether the evidence of guilt is overwhelming or whether the prosecutor has or has not made an inaccurate instruction a feature of the prosecution's argument are not germane to whether the error is fundamental." Reed, 837 So. 2d at 369. Simply stated, the defendant is entitled to an accurate instruction on the charged offenses and all lesser included offenses, and when the defendant is convicted of a crime not more than one step removed from the crime for which an erroneous instruction is given, fundamental error occurs if the instruction pertains to a disputed element of the crime.

We also note that, with the exception of the Fourth District, all the district courts have held that giving the standard jury instruction for attempted manslaughter by act constitutes fundamental error. See, e.g., Thompson v. State, 76 So. 3d 1050, 1052 (Fla. 1st DCA 2011) (holding that the standard instruction erroneously "adds the additional element that the defendant 'committed an act intended to cause the death' of the victim when attempted manslaughter by act requires only an intentional unlawful act" (quoting Lamb, 18 So. 3d at 735)); Houston v. State, 87 So. 3d 1, 2 (Fla. 2d DCA 2011) (holding that "the phrase 'committed an act which was intended to cause the death of' impermissibly creates an intent-to-kill element in the crime of attempted manslaughter" that is not required by the manslaughter statute); Burrows v. State, 62 So. 3d 1258, 1260 (Fla. 3d DCA 2011) (reversing Burrows' conviction for second-degree murder based on

a holding that the attempted manslaughter instruction was fundamental error); and Burton v. State, 36 Fla. L. Weekly D738, *1 (Fla. 5th DCA Apr. 8, 2011) (concluding that the jury instruction given for attempted manslaughter required proof of intent to kill and was, thus, fundamental error). What is more, in some district court cases the State conceded that the jury instruction for attempted manslaughter was erroneous and created fundamental error,[7] contrary to the position now taken by the State in this Court.[8]

Based on the foregoing analysis, we hold that the attempted manslaughter by act jury instruction given in this case constituted fundamental error. In so holding, we must quash the Fourth District's decision below and approve the decision of the First District in the certified conflict case of Lamb. The First District in Lamb correctly held that the trial court committed fundamental error by giving the

---

7. See, e.g., Gonzalez v. State, 40 So. 3d 60, 62 (Fla. 2d DCA 2010); Coiscou v. State, 43 So. 3d 123, 124 (Fla. 3d DCA 2010).

8. We also decline the State's invitation in this case to revisit our Montgomery decision. We have reconfirmed the holding in Montgomery in subsequent cases, such as Bonilla v. State, 75 So. 3d 233 (Fla. 2011), where we explained:

> In State v. Montgomery, 39 So. 3d 252 (Fla. 2010), we held that because defendant Montgomery, who was convicted of second-degree murder, was entitled to an accurate jury instruction on the necessarily lesser included offense of manslaughter by act, the use of the then-standard jury instruction on manslaughter by act constituted fundamental reversible error in his case because it erroneously required the jury to find that the defendant intentionally caused the death of the victim.

Bonilla, 75 So. 3d at 233.

standard jury instruction for attempted manslaughter by act because it added the additional element that the defendant "committed an act intended to cause the death" of the victim, when attempted manslaughter by act requires only an intentional unlawful act. See Lamb, 18 So. 3d at 735.

The Fourth District also certified a question to this Court asking if attempted manslaughter remains a viable offense in light of Montgomery. We answer this question in the affirmative and hold that attempted manslaughter by act remains a viable offense. We held in Taylor v. State, 444 So. 2d 931 (Fla. 1983), that attempted manslaughter by act is a cognizable crime in this state. There, tellingly, we noted: "We reiterate, however, that a verdict for attempted manslaughter can be rendered only if there is proof that the defendant had the requisite intent to commit an unlawful act." Id. at 934. We further held in Taylor that there can be no crime of attempted manslaughter by culpable negligence. Nothing in our decision in Montgomery causes us to conclude that attempted manslaughter is no longer a viable offense.

## CONCLUSION

Based on the foregoing analysis, we quash the decision of the Fourth District in Williams and remand for proceedings consistent with this decision. We further approve the decision of the First District in Lamb.

It is so ordered.

- 14 -

PARIENTE, LEWIS, QUINCE, and PERRY, JJ., concur.
CANADY, J., dissents with an opinion, in which POLSTON, C.J., concurs.

NOT FINAL UNTIL TIME EXPIRES TO FILE REHEARING MOTION, AND IF FILED, DETERMINED.

CANADY, J., dissenting.

Although I agree with the majority's answer regarding the second certified question, I disagree with its conclusion concerning the first certified question. For the reasons I have expressed in my dissent in Haygood v. State, No. SC11-294 (Fla. Feb. 14, 2013), I conclude that the jury pardon doctrine should be repudiated. Since the majority's conclusion that Williams is entitled to a new trial rests on the jury pardon doctrine, I dissent.

Here, as in Haygood, there is no evidentiary basis for giving an instruction on the one-step-removed lesser included offense. The uncontroverted facts regarding Williams' sustained and savage attack on the victim belie any suggestion that he lacked the depraved mind requisite for attempted second-degree murder and that a rational jury could have acquitted him of that offense and found him guilty of attempted manslaughter by act. I would therefore reject Williams' claims of fundamental error. The decision of the Fourth District Court of Appeal affirming Williams' convictions and sentences should not be disturbed.

POLSTON, C.J., concurs.

- 15 -

Application for Review of the Decision of the District Court of Appeal - Certified Direct Conflict of Decisions

Fourth District - Case No. 4D09-2159

(St. Lucie County)

Carey Haughwout, Public Defender, Fifteenth Judicial Circuit, Florida and Dea Abramschmitt and John Michael Conway and Margaret Price Natale, Assistant Public Defenders, Fifteenth Judicial Circuit, West Palm Beach, Florida,

for Petitioner

Pamela Jo Bondi, Attorney General, Tallahassee, Florida, and Consiglia Terenzio, Bureau Chief and Diane Fischer Medley and Melanie Dale Surber, Assistant Attorney Generals, West Palm Beach, Florida,

for Respondent