# Supreme Court of Florida

_____

No. SC14-860
_____

**THOMAS DAUGHERTY,**
Petitioner,

vs.

**STATE OF FLORIDA,**
Respondent.

[January 19, 2017]

LABARGA, C.J.

Thomas Daugherty seeks review of the decision of the Fourth District Court
of Appeal in Daugherty v. State, 96 So. 3d 1076 (Fla. 4th DCA 2012). Daugherty
cited as authority the district court decisions in Haygood v. State, 54 So. 3d 1035
(Fla. 2d DCA 2011), rev. granted, 61 So. 3d 410 (Fla. 2011) (table), and Williams
v. State, 40 So. 3d 72 (Fla. 4th DCA 2010), rev. granted, 64 So. 3d 1262 (Fla.
2011) (table), both of which were reversed by this Court.[1] We have jurisdiction.
See art. V, § 3(b)(3), Fla. Const. Upon review, we quash the decision of the

_____

    1. See Haygood v. State, 109 So. 3d 735 (Fla. 2013); Williams v. State, 123
So. 3d 23 (Fla. 2013).

district court and hold that where a defendant is convicted of second-degree murder after the jury is erroneously instructed on the lesser included offense of manslaughter by act, the one step removed analysis to determine fundamental error is not based on the order of the offenses on the verdict form. Rather, because manslaughter as a matter of degree is a next lesser offense of second-degree murder, giving an erroneous instruction on manslaughter by act constitutes fundamental error even if manslaughter is not listed immediately below second-degree murder on the verdict form. In this case, the error caused by a faulty instruction on manslaughter by act was not cured by the jury's consideration of other offenses that were also one step removed. Thus, we remand this case with instructions that Daugherty be granted a new trial for the homicide of Norris Gaynor.

Additionally, because the jury convicted Daugherty of attempted second-degree murder after being erroneously instructed on attempted voluntary manslaughter, we remand this case with instructions that Daugherty be granted a new trial for the attempted homicides of Jacques Pierre and Raymond Perez.

## FACTS AND PROCEDURAL BACKGROUND

Daugherty was convicted of one count of second-degree murder and two counts of attempted second-degree murder. These convictions stemmed from a series of three separate events during the early morning hours of January 12, 2006,

when Daugherty and two codefendants beat three homeless men in Fort Lauderdale. Victim Norris Gaynor died from his injuries hours after the attack. Victims Jacques Pierre and Raymond Perez survived their injuries. Daugherty was seventeen years old at the time of the crimes.

At trial, multiple witnesses, including codefendant William "Billy" Ammons, testified that Daugherty was present during the attacks on each victim. Ammons testified that after smoking marijuana and drinking at his home during the early morning hours of January 12, 2006, he, Daugherty, Brian Hooks, and Joey Griffith decided to ride to the beach. Ammons was the driver. While in the vicinity of Florida Atlantic University, either Daugherty or Hooks suggested that they "mess with" a man they saw sitting on a bench. All agreed, and Ammons parked his vehicle. Daugherty and Hooks took baseball bats with them and approached the man (Jacques Pierre). Daugherty and Hooks swung their bats at Pierre. Ammons testified that Daugherty's swing missed Pierre, while Hooks hit Pierre in the shoulder. Immediately afterwards, Ammons, Daugherty and the others ran back to Ammons' vehicle. The attack on Pierre was captured on surveillance video.

The group returned to Ammons' home and began smoking more marijuana and drinking. Each agreed to go out again and find another victim. While en route to another location, they rode past the location where they attacked Pierre and saw

yellow crime tape. Ammons parked near the local performing arts center, and Hooks and Daugherty went in search of another person to attack. The group approached a man (Norris Gaynor) who was laying on a bench. Daugherty hit Gaynor in the head with a baseball bat while Ammons, who was armed with a paintball gun, fired it multiple times. Daugherty and Hooks ran away, but they reapproached Gaynor after seeing him try to get up from the bench. Hooks hit Gaynor with a rake and Daugherty again hit Gaynor with the bat.

Ammons and Griffith left the area without Daugherty and Hooks, but later met up with them. They all returned to Ammons' home, and Griffith eventually departed from the others. Ammons, Daugherty, and Hooks continued to smoke marijuana and drink alcohol, after which they left Ammons' home in search of a third person to attack. Hooks, who was driving this time, parked his vehicle and retrieved a golf club and a play sword from inside the vehicle. Hooks gave Ammons the sword. Daugherty was armed with a baseball bat. The three started walking toward one man with the intent to attack him. However, they were distracted by another man, Raymond Perez, who was laying on the ground under a blanket. The three ran toward Perez. Ammons began hitting him with the sword, and Daugherty hit him with the bat. Perez started yelling, and the three ran away and returned to Ammons' home.

Pierre and Perez suffered serious injuries but survived. Gaynor died from blunt force trauma several hours after the attack, despite being treated in an emergency room. Gaynor suffered five cracked ribs, as well as skull and facial fractures, internal bleeding, swelling, and cuts and bruises. His eyes and lips were swollen, his forehead was cut and bruised, and his nose was broken. The part of his brain beneath the fractured skull area was crushed and cut in the front. Gaynor's face was also extensively fractured above his eyes.

Daugherty and Hooks were both charged with one count of first-degree murder and two counts of attempted first-degree murder. The two defendants were tried together. Ammons pled guilty to third-degree murder and testified at the joint trial. In addition to an instruction on the charged offense of first-degree murder, Daugherty's jury also received instructions on the lesser included offenses of second-degree murder, third-degree felony murder, manslaughter, and aggravated battery, respectively.[2] The manslaughter instruction contained not only the required instruction on manslaughter by act, but also a permissive instruction on

---

2. On the facts of this case, the jury should not have been allowed to consider aggravated battery as a non-homicide lesser included offense of first-degree murder. See Martin v. State, 342 So. 2d 501, 503 (Fla. 1977) (stating that "we hold that where a homicide has taken place, the proper jury instructions are restricted to all degrees of murder, manslaughter, and justifiable and excusable homicide."), superseded on other grounds by Fla. R. Crim. P. 3.490. While an instruction on a non-homicide lesser included offense may be permissible where there is evidence of an intervening cause of death, no such evidence exists here.

manslaughter by culpable negligence. The instruction on manslaughter by act was consistent with the instruction later deemed fundamentally erroneous in this Court's decision in State v. Montgomery, 39 So. 3d 252 (Fla. 2010).

On appeal, Daugherty challenged his convictions. With respect to his conviction for second-degree murder, Daugherty argued that the faulty instruction on the lesser included offense of manslaughter by act constituted fundamental error. The parties also disputed whether the jury's consideration of manslaughter by culpable negligence remedied the fundamental error caused by the manslaughter by act instruction.

The district court declined to conduct a fundamental error analysis. Instead, the court concluded that a harmless error analysis applied because the lesser included offense of third-degree felony murder was placed on the verdict form between second-degree murder and manslaughter. According to the district court, as a result of the layout of the verdict form, the offense of manslaughter was two steps removed from the second-degree murder offense of which Daugherty was convicted. The court explained:

> Even without considering that the jury received the manslaughter by culpable negligence instruction, we find that there is an independent reason why giving the manslaughter instruction, as a lesser included offense of the murder charge, was not fundamental error in this case. As our supreme court has explained, "When the trial court fails to properly instruct on a crime two or more degrees removed from the crime for which the defendant is convicted, the error is not per se reversible, but instead is subject to a harmless error analysis." Pena v.

- 6 -

State, 901 So. 2d 781, 787 (Fla. 2005). Here, because the jury was also instructed on the lesser included offense of third-degree felony murder, manslaughter was actually two steps removed from second-degree murder under the facts of this case. See Echols v. State, 484 So. 2d 568, 574 (Fla. 1985) (holding that manslaughter was a lesser included offense that was three steps removed from first degree murder where the jury, if inclined to exercise its "pardon" power, could have returned verdicts of second-degree or third-degree murder). If the jury had been inclined to exercise its pardon power, it could have returned a verdict of third-degree felony murder, which was the next lower crime on the verdict form; the evidence in this case would have supported a conviction for third-degree felony murder. We conclude that the error in the manslaughter by act instruction was harmless and did not constitute fundamental error.

Daugherty, 96 So. 3d at 1078. Thus, the court concluded that Daugherty was not entitled to relief because the erroneously instructed crime of manslaughter did not immediately follow the offense of conviction, second-degree murder, on the verdict form, but was instead preceded by third-degree felony murder.

The district court affirmed Daugherty's convictions. However, in light of the United States Supreme Court's decision in Miller v. Alabama, 132 S. Ct. 2455 (2012) (holding unconstitutional mandatory sentences of life imprisonment without parole for juvenile offenders), it reversed Daugherty's sentence of life imprisonment for second-degree murder. Additionally, the court certified "conflict with the contrary decisions of the other districts" regarding the attempted manslaughter instruction. Because it required the jury to find that the defendant intended to cause the death of the victim, it contained the same flaw as the manslaughter by act instruction. Daugherty, 96 So. 3d at 1079. In November

2012, Daugherty was resentenced to forty years in prison on the second-degree murder conviction.

## ANALYSIS

Daugherty, who was convicted of second-degree murder, contends that he is entitled to relief because the jury instruction on the lesser included offense of manslaughter by act erroneously required that the jury find he intended to kill Gaynor. Daugherty argues that giving the erroneous instruction on manslaughter by act, an offense that is one step removed from second-degree murder, constituted fundamental error. In the proceedings below, the district court evaluated the error caused by the faulty manslaughter by act instruction. However, the court concluded the instruction did not constitute fundamental error because according to the layout of the verdict form, manslaughter was not one step removed, but rather, two steps removed from second-degree murder. Daugherty also asserts that his convictions for attempted second-degree murder are invalid because the jury instruction for the lesser included offense of attempted voluntary manslaughter, an offense one step removed from the offenses of conviction, improperly required the jury to find that he intended to cause the death of victims Pierre and Perez.

As we explain below, we disagree with the district court's analysis of what constitutes a step removed. We therefore quash the decision of the Fourth District Court of Appeal and remand for a new trial on the homicide count. We further

conclude that the instructions on attempted voluntary manslaughter constituted fundamental error and similarly remand for a new trial on those counts. We first address Daugherty's conviction for second-degree murder.

## Second-Degree Murder

### State v. Montgomery

The erroneous manslaughter by act instruction in Daugherty's case is consistent with that given in Montgomery, 39 So. 3d 252. In Montgomery, the defendant was tried for first-degree premeditated murder, but was convicted of second-degree murder. The jury was instructed on first-degree murder and the required lesser included offenses of second-degree murder and manslaughter by act. On the verdict form, the charged offense of first-degree murder was listed first, followed by second-degree murder, and then manslaughter. Montgomery's jury was properly instructed as to both first-degree and second-degree murder. However, at the time of the trial, the standard jury instruction on manslaughter by act erroneously required the State to prove that one, the victim was dead, and two, that the defendant "intentionally caused the death of [the] (victim)." Fla. Std. Jury Instr. 7.7 (2006). The jury was additionally instructed that: "In order to convict of manslaughter by intentional act, it is not necessary for the State to prove that the defendant had a premeditated intent to cause death." Montgomery, 39 So. 3d at

256 (quoting Fla. Std. Jury Instr. 7.7 (2006)). Montgomery did not preserve the error with an objection at trial.

Florida's manslaughter statute, set forth in section 782.07, Florida Statutes (2005), "does not impose a requirement that the defendant intend to kill the victim." Id. at 256. Guided by this statute, this Court concluded:

> Although in some cases of manslaughter by act it may be inferred from the facts that the defendant intended to kill the victim, to impose such a requirement on a finding of manslaughter by act would blur the distinction between first-degree murder and manslaughter. Moreover, it would impose a more stringent finding of intent upon manslaughter than upon second-degree murder, which, like manslaughter, does not require proof that the defendant intended to kill the victim. Thus, we conclude that under Florida law, the crime of manslaughter by act does not require proof that the defendant intended to kill the victim.

Id.

After clarifying that under Florida law, the crime of manslaughter by act does not require the intent to kill, this Court evaluated the jury instruction given and concluded that the language "intentionally caused the death of (victim)" erroneously required the jury to find intent in order to convict Montgomery of manslaughter: "We agree with the district court's observation . . . that a reasonable jury would believe that in order to convict Montgomery of manslaughter by act, it had to find that he intended to kill [the victim]." Id. at 257. This Court further concluded that the additional language "it is not necessary for the State to prove that the defendant had a premeditated intent to cause death" was "insufficient to

- 10 -

erode the import of the second element: that the jury must find that the defendant intended to cause the death of the victim." Id.

Having concluded that the crime of manslaughter by act did not require the intent to kill, and that the then-standard jury instruction erroneously required such a finding, the remaining inquiry in Montgomery was whether the giving of the erroneous instruction amounted to fundamental error. See id. at 257-58 ("Because Montgomery did not contemporaneously object to the manslaughter instruction, we apply a fundamental error analysis here."). This Court explained that fundamental error could only occur where the erroneous instruction "was 'pertinent or material to what the jury must consider in order to convict.' " Id. at 258 (quoting State v. Delva, 575 So. 2d 643, 645 (Fla. 1991)). This Court further observed that manslaughter, a next lesser offense of second-degree murder, was one step removed from second-degree murder, and we evaluated the relationship between second-degree murder and manslaughter by act as follows: "If the jury is not properly instructed on the next lower crime, then it is impossible to determine whether, having been properly instructed, it would have found the defendant guilty of the next lesser offense." Id. at 259 (quoting Pena v. State, 901 So. 2d 781, 787 (Fla. 2005)). In sum, Montgomery was convicted of second-degree murder after the jury was erroneously instructed on the next lesser offense of manslaughter (a crime one step removed from second-degree murder), and the erroneous instruction

- 11 -

was pertinent and material to what the jury had to consider in order to convict. Thus, the erroneous instruction constituted fundamental error.[3]

<u>Daugherty's Manslaughter Instruction</u>

Like defendant Montgomery, Daugherty was convicted of second-degree murder after the jury was erroneously instructed on manslaughter by act. Daugherty's jury received the following instruction:

> As to Count one in the Indictment, before you can find Thomas Daugherty to be guilty of the lesser included crime of manslaughter, the State must prove the following elements beyond a reasonable doubt. One, Norris Gaynor is dead. Two, Thomas Daugherty intentionally caused the death of Norris Gaynor, or the death of Norris Gaynor was caused by the culpable negligence of Thomas Daugherty.
>
> * * *
>
> In order to convict of manslaughter by intentional act, it is not necessary for the State to prove that the defendant had a premeditated intent to cause death.

While Montgomery and Daugherty were both convicted of second-degree murder after the jury was erroneously instructed on the lesser included offense of manslaughter by act, there is a significant distinction between the two cases. In <u>Daugherty</u>, in addition to first-degree murder, second-degree murder, and manslaughter, the jury was also instructed on the lesser included offense of third-

_____

3. Since this Court issued <u>Montgomery</u>, the standard jury instruction has been amended to clarify the intent required for a conviction of manslaughter by act.

- 12 -

degree felony murder. For the district court, this distinction was outcome-determinative because of the order in which the lesser included offenses were listed on the verdict form.

This Court has explained that when drafting a verdict form, "[t]he charged crime should be followed on the verdict form by the determined lesser included offenses in descending order by degree of offense." Sanders v. State, 944 So. 2d 203, 207 (Fla. 2006). Lesser included offenses in Florida are divided into two categories: category one and category two. Category one lesser included offenses are required lesser included offenses on which the jury must be instructed. Second-degree murder (a first-degree felony), and manslaughter by act (a second-degree felony), are the category one lesser included offenses of first-degree murder. In addition to the category one, required lesser included offenses of first-degree murder, there are more than one dozen category two, permissible lesser included offenses. This Court has explained:

> . . . when the commission of one offense always results in the commission of another, the latter offense is a category-one necessarily lesser included offense. If the lesser offense has at least one statutory element not contained in the greater, it cannot be a category-one necessarily lesser included offense. However, such a lesser offense may be a category-two permissive lesser included offense if its elements are alleged in the accusatory pleading and proven at the trial.

Taylor v. State, 608 So. 2d 804, 805 (Fla. 1992) (citing State v. Weller, 590 So. 2d 923 (Fla. 1991)). Third-degree felony murder is a category two lesser included offense of first-degree murder.

In Montgomery, the jury received instructions only on the category one lesser included offenses. Thus, the verdict form listed, in descending order of offenses: first-degree murder, then second-degree murder, then manslaughter, which are each progressively less severe in terms of degree. In Daugherty, while the jury was instructed on the category one lesser included offenses, the trial court also instructed the jury on the category two lesser included offense of third-degree felony murder.

This Court has consistently observed that manslaughter, a next lesser included offense of second-degree murder, is one step removed from second-degree murder. It is this relationship between the two offenses that undergirds this Court's conclusion that the erroneous manslaughter instruction in Montgomery constituted fundamental error. However, this Court has previously concluded that third-degree felony murder—which, like manslaughter, is also a second-degree felony—is also one step removed from second-degree murder. See Herrington v. State, 538 So. 2d 850, 851 (Fla. 1989). "Although third-degree felony murder is not a necessarily included offense of first-degree murder, it is, under certain circumstances and evidence, a proper permissive lesser included offense of first-

degree murder, requiring a jury instruction to that effect." Green v. State, 475 So. 2d 235, 236 (Fla. 1985).

### One Step Removed

In determining whether the erroneous manslaughter instruction constituted fundamental error in Daugherty, the district court's analysis focused on the order in which the lesser included offenses were listed on the verdict form. The court concluded that because the jury was instructed on third-degree felony murder, and because third-degree felony murder was placed on the verdict form between second-degree murder and manslaughter, manslaughter was not one step but was, instead, two steps removed from second-degree murder. Thus, the district court's determination of whether a lesser included offense was one step removed from the offense of conviction was based solely on where the lesser included offense is listed on the verdict form. Applying this reasoning, had the verdict form listed second-degree murder, then manslaughter, then third-degree felony murder, Daugherty would have been entitled to relief. This reasoning cannot stand, as it would lead to disparate results from case to case.

We acknowledge that what constitutes a step removed has never been clearly defined. Historically, the cases that have come before this Court have not required a determination of what a step removed means. Because these cases involved lesser included offenses that were each progressively lesser than one another in

terms of severity, their placement on the verdict form was consistent with that hierarchy. Thus, whether the interpretation of a step removed was based on: (1) the degree of the lesser included offense relative to the degree of the offense of conviction, or (2) the location of the lesser included offense on the verdict form relative to the location of the offense of conviction, the result was the same.

Here, however, this Court is confronted with a situation where there are multiple lesser included offenses of the same degree—manslaughter by act and third-degree felony murder. Thus, we must clarify what constitutes a step removed in order to evaluate whether Daugherty is entitled to relief. We must decide whether the fundamental error caused by the erroneous instruction on the lesser included offense of manslaughter—a next lesser offense of second-degree murder—can occur only when manslaughter is listed immediately below second-degree murder on the verdict form.

Daugherty argues that because third-degree felony murder and manslaughter are both second-degree felonies, the fact that third-degree murder separated second-degree murder and manslaughter on his verdict form should not deprive him of relief. We agree. The district court's interpretation of what constitutes a step removed improperly focused on the appearance of the verdict form and based a defendant's entitlement to relief on an arbitrary set of circumstances—which lesser included offense is listed first when drafting the verdict form. We conclude

- 16 -

that the determination of what constitutes a step removed is not based on the layout of the verdict form, but rather, the relationship between the offense of conviction and the erroneous lesser included offense instruction.

Manslaughter, a second-degree felony, is a next lesser offense of second-degree murder. However, as we previously observed in Herrington, so is third-degree felony murder (also a second-degree felony). Daugherty's jury was instructed on multiple next lesser included offenses of the same degree of severity, and Daugherty was entitled to a proper instruction on each. The placement of third-degree felony murder on the verdict form did not, by mere virtue of its location between second-degree murder and manslaughter, remedy the error caused by the faulty manslaughter instruction. To conclude otherwise would leave to mere chance a defendant's entitlement to relief based on how the verdict form is fashioned.

Daugherty's Case and Fundamental Error

Jury instructions are subject to the contemporaneous objection rule. In the absence of an objection at trial, a challenge can be raised on appeal only if fundamental error occurred. See Delva, 575 So. 2d at 644. When evaluating fundamental error, there is a difference "between a disputed element of a crime and an element of a crime about which there is no dispute in the case." Reed v. State, 837 So. 2d 366, 369 (Fla. 2002). "In other words, 'fundamental error occurs only

when the omission is pertinent or material to what the jury must consider in order to convict.' " Id. at 370 (quoting Stewart v. State, 420 So. 2d 862, 863 (Fla. 1982)).

In the present case, where Daugherty was indicted and tried for first-degree murder and convicted of second-degree murder, we conclude that the issue of intent was pertinent or material to what the jury had to consider in order to convict. The problem with the manslaughter instruction was that it erroneously required a finding of intent. Indeed, "[a] homicide found to be unlawful is not automatically just one offense, but will be one of several possible homicide offenses depending upon the nature of the intent or the lack of any intent at the time of the homicide." Griffin v. State, 160 So. 3d 63, 68 (Fla. 2015).

"As we have explained, where the erroneous instruction pertains to an element that is material to the jury's deliberation and is in dispute, fundamental error occurs, as our precedent indicates, if that offense is one step removed from the crime for which the defendant is convicted." Haygood, 109 So. 3d at 742 (emphasis added). "The result of incorrectly instructing on a necessarily lesser included offense . . . is that the jury is deprived of all the tools it needs to reach a proper verdict in the case before it." Id. at 743. Thus, fundamental error occurred where Daugherty was convicted of second-degree murder, intent was an issue at trial, and the instruction on manslaughter by act, an offense one step removed from

- 18 -

second-degree murder, was pertinent or material to what the jury had to consider to convict.

What remains to be determined is whether the fundamental error caused by the faulty manslaughter by act instruction was cured by the giving of either the third-degree felony murder instruction or the culpable negligence instruction. These offenses—like manslaughter by act—are one step removed from second-degree murder. We conclude that in this case, where the record does not support a finding of culpable negligence, and the jury instruction on third-degree felony murder prevented the jury from a full and accurate consideration of that offense, it was not cured.

### Manslaughter by Culpable Negligence

"Every case of manslaughter by culpable negligence must be determined upon the facts and circumstances peculiar to it." Scarborough v. State, 188 So. 2d 877, 877 (Fla. 2d DCA 1966) (citing Fulton v. State, 108 So. 2d 473 (Fla. 1959)). "There is nothing mystical about culpability. It comprehends blame, censure or some aspect of erratic conduct." Fulton, 108 So. 2d at 475.

The culpable negligence instruction provided that in failing to act reasonably towards others, Daugherty must have been without any conscious intention to harm. Although Daugherty challenged whether he intended to kill Norris Gaynor, no reasonable jury could conclude that Daugherty lacked a conscious intention to

- 19 -

harm when he hit Gaynor with a baseball bat. Daugherty's intentional conduct of seeking a victim to attack with a baseball bat belies the very concept of negligence. Thus, the evidence in Daugherty's case does not support a finding of manslaughter by culpable negligence. It does, however, support a finding of manslaughter by act—that Daugherty intended to commit an act that caused Gaynor's death—which further underscores the harm caused by the erroneous manslaughter by act instruction.

Third-Degree Felony Murder

Moreover, given the circumstances of this case, the wording of the third-degree felony murder instruction would have prevented the jury from convicting Daugherty of third-degree felony murder. Consequently, the giving of the instruction did not remedy the fundamental error caused by the faulty manslaughter by act instruction.

Daugherty's jury was instructed on third-degree felony murder, with aggravated battery as the underlying felony. Third-degree felony murder is a "catch-all" felony murder crime, in that it may be based on any felony other than those enumerated in section 782.04, Florida Statutes. Aggravated battery is not one of the enumerated felonies, and as such, may form a basis for a conviction of third-degree felony murder.

While it appears that the jury could have reasonably found beyond a reasonable doubt that the facts supported the underlying felony of aggravated battery, the wording of the then-standard jury instruction on third-degree felony murder, "the death occurred as a consequen[ce] of and while Thomas Daugherty was engaged in the commission of aggravated battery" would have prevented the jury from so finding based on the evidence presented. Given this instruction, a jury could reasonably conclude that Daugherty could only be guilty of third-degree felony murder if Gaynor died <u>during</u> the attack. Gaynor did not die until hours after the attack and after seeking medical attention. Thus, the wording of this instruction would have prevented the jury from convicting Daugherty of third-degree felony murder. In fact, the standard jury instruction on third-degree felony murder was revised in 2014 in a manner that rectified this very concern and more accurately captured the State's burden of proof. The current instruction now reads: "While engaged in the commission of a[n] (felony alleged), [(defendant)] [(defendant's accomplice)] caused the death of (victim)." <u>In re Std. Jury Inst. in Crim. Cases—Report No. 2013-03</u>, 146 So. 3d 1110 (Fla. 2014); Fla. Std. Jury Instr. (Crim.) 7.6 (2014).

Because the evidence would have supported a conviction of the properly instructed offense of manslaughter by act, the record does not support a conviction of manslaughter by culpable negligence, and the wording of the third-degree

felony murder instruction prevented a full and accurate consideration of that lesser included offense, the jury was deprived of the tools necessary to reach a proper verdict on the homicide count. Daugherty is entitled to a new trial for the homicide of Norris Gaynor. We now turn to Daugherty's convictions for attempted second-degree murder.

## Attempted Second-Degree Murder

Daugherty was tried for two counts of attempted first-degree murder and was convicted of attempted second-degree murder on both counts after the jury was erroneously instructed on the lesser included offense of attempted voluntary manslaughter. Daugherty's intent was in dispute. The jury instruction was consistent with the language that this Court deemed erroneous in Williams v. State, 123 So. 3d 23 (Fla. 2013). In Williams, this Court held that the attempted voluntary manslaughter instruction, which also required the jury to find that the defendant intended to cause the death of the victim, constituted fundamental error where it was one step removed from the offense of conviction, and intent was disputed at trial. Id. at 30.[4] The State argues that Daugherty is not entitled to relief because the jury was also instructed on the lesser included offense of aggravated

_____

4. The standard jury instruction on attempted voluntary manslaughter was amended to remove the faulty intent language. Moreover, because the manslaughter statute does not define manslaughter as voluntary/involuntary, the jury instruction was renamed "attempted manslaughter by act." See In re Amends. to Std. Jury Instrs. in Crim. Cases—Instr. 6.6, 132 So. 3d 1124 (Fla. 2014).

- 22 -

battery.  We disagree.  "Simply stated, the defendant is entitled to an accurate instruction on the charged offenses and all lesser included offenses, and when the defendant is convicted of a crime not more than one step removed from the crime for which an erroneous instruction is given, fundamental error occurs if the instruction pertains to a disputed element of the crime."  Id. at 29.  Daugherty is entitled to a new trial on these counts.

## CONCLUSION

Fundamental error occurred as to each count charged in this case. Accordingly, we quash the decision in Daugherty and remand to the district court with instructions that Daugherty be granted a new trial on all counts.

It is so ordered.

PARIENTE, LEWIS, and QUINCE, JJ., and PERRY, Senior Justice, concur.
POLSTON, J., dissents with an opinion, in which CANADY, J., concurs.

NOT FINAL UNTIL TIME EXPIRES TO FILE REHEARING MOTION, AND IF FILED, DETERMINED.

POLSTON, J., dissenting.

Because I do not believe fundamental error occurred, I would approve the Fourth District's decision.  See Haygood v. State, 109 So. 3d 735, 746-52 (Fla. 2013) (Canady, J., dissenting).

CANADY, J., concurs.

Application for Review of the Decision of the District Court of Appeal – Direct Conflict of Decisions

Fourth District - Case No. 4D08-4624

(Broward County)

Donna Duncan and Steven Lauren Seliger of Sanders and Duncan, P.A., Apalachicola, Florida,

for Petitioner

Pamela Jo Bondi, Attorney General, Tallahassee, Florida; Consiglia Terenzio, Bureau Chief, and Jeanine Marie Germanowicz, Assistant Attorney General, West Palm Beach, Florida; and Kristen Lynn Davenport, Assistant Attorney General, Daytona Beach, Florida,

for Respondent